Joseph **GUILLORY**, Plaintiff-Appellant,

v.

**ST. LANDRY PARISH POLICE JURY,** et al., Defendants-Appellees.

No. 86–4004
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 20, 1986.

James C. Ferguson, Brooks E. Hester, Baton Rouge, La., for plaintiff-appellant.

I. Jackson Burson, Jr., Eunice, La., for defendants-appellees.

Before POLITZ, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Joseph Guillory worked as the Public Works Superintendent and Safety Engineer for the St. Landry Parish Police Jury (hereinafter "Police Jury" or "Jury") from April 1979 to June 2, 1981, when the Police Jury voted to abolish his job at the expiration of his one year employment contract. In early 1982, the Jury recreated the post of Public Works Superintendent. Guillory, who is black, applied for the job, but the Jury hired Gene Valin, who is white, instead. Guillory sued the Police Jury and its members, alleging that they fired and then refused to rehire him because of his race. Guillory brought a civil rights suit under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 and asserted state law claims as well. After a three day non-jury trial, the district judge ruled against Guillory on all claims. Guillory filed a timely appeal. We affirm the judgment of the district court.

## I. *Factual Background*

Before 1974, the St. Landry Parish consisted of several "wards," each managed by one police juror. Among other things, the Police Jury maintains the roads and public works for the parish. In 1974, the Louisiana legislature offered state transportation funds to parishes that switched from the "ward system" to a "unit system" of government. Under the "unit system," the Police Jury as a whole authorizes expenditures for road work in the entire parish; individual jurors lose control over individual wards. La.Rev.Stat.Ann. § 48:754 (Supp.1986).

The Jury hired Joe Guillory to act as liaison between the parish manager and the road crew foremen. Guillory also inspected the trucks and equipment used on the

roads for proper safety and maintenance and kept the road signs in good repair.

A few months after it abolished Guillory's position, the Jury hired Gene Valin as its Public Works Superintendent. Valin worked at this job from March to July in 1982. James Reynolds, who also is white and a civil engineer, succeeded Valin on October 4, 1982. The Jury later hired a white Assistant Public Works Superintendent who had surveying experience.

Guillory complains on appeal that the district court (1) applied an improper legal standard to his §§ 1981 and 1983 claims and (2) made "clearly erroneous" factual findings.

## II. The Legal Standards in a Race Discrimination Claim

 The district judge properly imposed the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 32 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) on Guillory's claims. First, Guillory was required to establish a *prima facie* case. Then the defendants were required to articulate some legitimate, nondiscriminatory reason for their employment decision. Finally, the claimant had the opportunity to show that the defendants' stated reasons were really pretexts for discrimination. This step-by-step analysis applies whether a plaintiff alleges violations of Title VII, § 1981, or § 1983. *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980). Guillory's termination as well as his later unsuccessful application for reemployment must be evaluated as separate instances of alleged discrimination under these legal inquiries. *Id.* at 120. In the alternative, of course, the district judge recognized that a plaintiff may present direct evidence that racial discrimination was a substantial motivating cause of his termination, such as a statement or written document showing discriminatory motive on its face. Defendants can counter such evidence only by showing by a preponderance of the evidence that they would have acted as they did without re-

gard to the plaintiff's race. *Lee v. Russell County Board of Education*, 684 F.2d 769, 773–74 (5th Cir.1982). We find no error in the district judge's definition of the legal principles governing the case.

## III. Factual Findings

We must uphold the district judge's factual findings unless they are "clearly erroneous." Rule 52(a), Fed.R.Civ.P.; *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1395–96 (5th Cir.1983). In reviewing factual findings, we should defer to the district judge's assessment of the credibility of the witnesses. *Verrett v. McDonough Marine Service*, 705 F.2d 1437, 1443 (5th Cir.1983). Whether an employer had racially discriminatory intent is a question of fact. *Pullman-Standard v. Swint*, 456 U.S. 273, 286, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

 The district judge found that Guillory failed to establish a case of discrimination by direct evidence. He did find, however, that Guillory had presented a *prima facie* case of racial discrimination under the *McDonnell Douglas* test. This finding is not disputed on appeal. The district judge then considered the defendants' stated reasons for their employment decisions, and he concluded that the reasons given were valid and negated the *prima facie* showing. We have examined the entire record, and it contains sufficient evidence to affirm these findings. At trial, the district judge heard testimony that Guillory duplicated the work of the parish manager, and abolishing his position could save money during a period of budget cuts. There was evidence that Guillory neglected his duties as the safety engineer and that Guillory had heart problems that limited his physical activities. Some police jurors were shown to have personal but nonracial animosity against Guillory. Gene Valin, Guillory's replacement after the hiatus, was shown to have an impressive employment record in the trucking industry. In addition, statistical evidence showed that between 1979 and 1982 the Jury reduced its staff of white employees and increased its number of black employees.

■ Similarly, sufficient evidence supports the district court's finding that the police jurors did not conspire to violate Guillory's civil rights, as proscribed by 42 U.S.C. § 1985. Given these findings, the district court properly rejected Guillory's claim under 42 U.S.C. § 1986. *Bradt v. Smith*, 634 F.2d 796 (5th Cir.1981), *cert. denied*, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (violation of § 1985 is prerequisite to recovery under § 1986).

### IV. *Other Federal Claims*

■ The district judge addressed three other federal claims. First, he found that the defendants did not deprive Guillory of property without due process of law. The Police Jury may have violated its own rules by failing to give proper notice before abolishing Guillory's job at its June 2, 1981 meeting.[1] But we need not decide whether the Jury violated its rules or whether its procedures satisfied the requirements of the due process clause. The district court properly found that Guillory had no property interest in continued employment with St. Landry Parish.

Property rights are created by state law or rules and understandings that support a claim to the entitlement in question. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In Louisiana, Police Jury employees are "unclassified" civil servants who may be discharged without cause. La. Const. Art. X § 2(B)(10); *Lague v. St. Charles Parish Police Jury*, 363 So.2d 1240, 1241 (La.App. 4th Cir.1978) (unclassified employees terminable at will); *Cherry v. Office of Criminal Sheriff*, 454 So.2d 293, 295 (La.App. 4th Cir.1984) (unclassified employees work

"at the discretion" of the Jury). Guillory had no written employment contract; he served a one year term and had no property right to reappointment.

■ Second, the district court found that the defendants did not retaliate against Guillory for exercising his First Amendment rights. Guillory advanced a free speech claim, but it was not based upon specific instances of the exercise of First Amendment rights. It was based rather upon a general claim that he had angered the police jurors by regularly insisting that the requirements of the unit system be carried out. The district judge found that Guillory had not engaged in protected speech simply by doing his job and helping to implement the "unit system" of parish management.[2] Guillory's original complaint stated that jurors regarded him as a "hardliner" because he upheld applicable state laws regarding the use of parish property. At trial, some of Guillory's witnesses testified that Guillory did his job and followed Police Jury orders, but he offered no evidence that any juror ordered him to violate the "unit system" rules.[3]

In some situations, nonverbal conduct can constitute protected "speech" for purposes of the first amendment. *E.g., Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 505, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969) (wearing arm-bands to protest the Vietnam War is a protected "symbolic act"); *Spence v. State of Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974) (taping black peace symbols to United States flag in 1970 expressed political criticism that viewers understood); *Buckley v.*

---

1. According to Jury rules, an agenda listing upcoming items of business should be sent to the jurors before each meeting. The agenda for the June 2, 1981 meeting indicated that Guillory's reappointment would be discussed but not that his post might be abolished altogether. At trial, some jurors testified that they knew before June 2 of the plan to abolish the position anyway. Witnesses presented conflicting evidence about whether the Jury regularly abolished positions at its annual meeting with no more notice than it had in this case.

2. The district judge noted that some jurors resented Guillory and the "unit system," which reduced their control over their wards.

3. At trial, former parish manager Ronnie Ortega testified that some jurors disapproved of Guillory's support for John Matte, a candidate for the Police Jury. Guillory did not raise his support for Matte in his complaint or his appeal briefs; the district court did not consider this contention, nor do we.

*Valeo,* 424 U.S. 1, 14–23, 96 S.Ct. 612, 632–36, 46 L.Ed.2d 659 (1976) (campaign expendures are political expression). We need not in this case inquire deeply into the scope of non-verbal "speech" under the First Amendment. It is enough that we agree with the district court that Guillory failed to show that his general job performance, lacking assertion of specific speech activity, resembled the expressive conduct at stake in cases such as *Tinker, Spence,* and *Valeo.*

Finally, Guillory complains that the defendants' testimony at trial regarding the reasons for their employment decisions exceeded the scope of answers given to interrogatories before trial. Regardless of the merits of this claim, we find that Guillory never made objection at trial when the defendants testified. Guillory cannot raise his objections for the first time on appeal. *See Vergott v. Deseret Pharmaceutical Co.,* 463 F.2d 12, 17 (5th Cir.1972).

### V. *State Law Claims*

 Guillory also claims that the defendants violated state law by discharging him. First, Guillory urges us to adopt for Louisiana a "public policy exception" to its "employment-at-will" doctrine. Louisiana law allows employers to discharge employees without cause. La.Civ.Code Ann. art. 2747 (West 1952). We must decline Guillory's invitation to limit Art. 2747. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Louisiana's own courts clearly have rejected such an exception. *Gil v. Metal Service Corp.,* 412 So.2d 706, 708 (La.App. 4th Cir.1982), *writ denied,* 414 So.2d 379.

Second, Guillory argues that the defendants violated an implied covenant of good faith in his employment contract. The district court rejected this claim, noting that Guillory had no written employment contract with the parish. Though the parish perhaps could not have fired Guillory without cause in the middle of his employment term, *Wiley v. Missouri Pacific Railroad Co.,* 430 So.2d 1016 (La.App. 3rd Cir.1982), *writ denied,* 431 So.2d 1055, it could dismiss him without justification at the end of his year.

Finally, Guillory claims that the defendants wrongfully discharged him in violation of La.Civ.Code Ann. art. 2315(A) (Supp.1986), which reads: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2315 forbids one to discharge an employee in violation of the Louisiana Constitution or the Federal Constitution or statutes. *Gil,* 412 So.2d at 707. The defendants did not violate Guillory's constitutional or statutory rights, so the district court properly rejected his claim under Article 2315.

The decision of the district court is

AFFIRMED.