Allen GLUCK, et al.

v.

CASINO AMERICA, INC., et al.

No. Civ.A. 97–2199.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Sept. 4, 1998.

Henry Clay Walker, Walker Tooke, et al., Shreveport, LA, for plaintiff.

Mark N. Mallery, John O. Pieksen, Jr., McGlinchey Stafford, New Orleans, LA, Paula A. Johnson, McGlinchey, et al., Houston, TX, for defendants.

## JUDGMENT

STAGG, District Judge.

For the reasons assigned in the Report and Recommendation of the Magistrate Judge previously filed herein, and having thoroughly reviewed the record and concurring with the findings of the Magistrate Judge under the applicable law;

**IT IS ORDERED** that the Partnership's Motion for Partial Dismissal (Doc. No. 19) is **GRANTED IN PART** by dismissing Plaintiff's claims for compensatory damages under the ADEA and by dismissing Plaintiff's claims under La.Civ.Code art. 2315.

## REPORT AND RECOMMENDATION

PAYNE, United States Magistrate Judge.

Allen Gluck ("Plaintiff") filed his original complaint against Casino America, Inc. alleg-

ing violation of the Age Discrimination in Employment Act ("ADEA") and invoking supplemental jurisdiction over a state law claim under La.Civ.Code art. 2315 based upon the same acts. Casino America, Inc. filed a Motion to Dismiss (Docket No. 2) that argued that (1) it is not Plaintiff's employer, (2) that Article 2315 does not provide a cause of action for employment discrimination, and (3) that compensatory damages are not recoverable under the ADEA. Plaintiff later stipulated to the dismissal of Casino America, Inc. and amended his complaint to name as the new defendant Louisiana Riverboat Gaming Partnership (the "Partnership"). (Docket Nos. 4 and 21) The Partnership filed its own Motion for Partial Dismissal that repeated the attacks upon Plaintiff's claim under Article 2315 and any claim for compensatory damages under the ADEA. (Docket No. 19) Those two issues are now ripe for report and recommendation.[1]

## THE ADEA AND COMPENSATORY DAMAGES

■ The ADEA permits recovery of "legal or equitable relief" for violations. The Fifth Circuit has interpreted this language to mean that general damages are not authorized under the ADEA. *See Dean v. American Security Ins. Co.*, 559 F.2d 1036, 1038–39 (5th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 824 (5th Cir. 1990). Plaintiff has offered no argument or authority on this issue. The Motion to Dismiss should be granted with respect to this issue.

## THE ARTICLE 2315 CLAIM

### Introduction

Plaintiff contends that the same acts of his employer that violate the federal ADEA also give rise to a cause of action under Louisiana's general tort law, La.Civ.Code art. 2315. If Plaintiff proves an ADEA violation, he argues, the violation also constitutes a state

law tort. The practical effect of holding that Plaintiff has an Article 2315 cause of action is to permit him to recover the general compensatory damages that are otherwise unavailable under either the federal ADEA or its Louisiana counterpart, the LADEA, found at La.R.S. 23:311, et seq.

### Guillory, Gil and Baynard: Dictum and Distinction

Plaintiff's argument is founded upon language from the Fifth Circuit that, "Article 2315 forbids one to discharge an employee in violation of the Louisiana Constitution or the Federal Constitution or statutes." *Guillory v. St. Landry Parish Police Jury*, 802 F.2d 822, 826 (5th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). That sweeping statement is, however, *dictum* because the Court concluded in the next sentence that the defendants did not violate Mr. Guillory's constitutional or statutory rights, making the quoted sentence unnecessary to the Court's decision. The statement was also made without any analysis and cited only one case in support, *Gil v. Metal Service Corp.*, 412 So.2d 706 (La.App. 4th Cir.1982), *writ denied*, 414 So.2d 379(La.). This court's reading of *Gil* finds no support in that case for the position advocated by Plaintiff.

■ Mr. Gil alleged that he was fired for protesting and refusing to participate in an illegal trade practice committed by his employer. The Fourth Circuit found that Mr. Gil had no cause of action under Article 2315. In the course of its analysis the court acknowledged Louisiana's strong policy of employment-at-will, recognized that there were several (inapplicable) statutory exceptions such as those prohibiting racial discrimination, and ultimately concluded that there was no state or federal statutory or constitutional prohibition against firing an employee who refused to participate in an act he believed illegal.[2] Some plaintiffs have since taken the position that *Gil* implies that if there had been such a prohibition that Article 2315 would have provided a remedy. This court

---

1. Counsel for Plaintiff was advised at a Scheduling Conference that he would be permitted to rely upon the memorandum that he filed when Casino America, Inc. raised the same issues. *See* Memorandum at Docket 12.

2. Louisiana has since provided a statutory cause of action for a whistle blower. *See* La.R.S. 23:967.

declines to abrogate Louisiana's carefully crafted legislative scheme of remedies for employment discrimination victims by reading *Gil* in such a creative fashion. When the state courts have been less than clear on an issue, a federal *Erie* court must be careful not to mistakenly invent new state law causes of action or remedies where they were not intended.

Another case that is often cited by parties on both sides of this issue is *Baynard v. Guardian Life Ins. Co.*, 399 So.2d 1200 (La. App. 1st Cir.1981). Mr. Baynard argued that the Louisiana Constitution recognizes that age discrimination is a fault and provides, through article 2315, redress for injury caused by that fault. The First Circuit pointed out that the state constitution prohibits discrimination by *laws*, and that Mr. Baynard pointed to no *law* which discriminated against him. Mr. Baynard next argued that the state constitution establishes a state policy that age discrimination is wrong and that the flexible civil law system permits recognition of a cause of action for age discrimination through Article 2315. At the time Mr. Baynard was fired, neither the state nor federal legislatures had enacted age discrimination statutes, although they did so shortly thereafter. The appellate court disagreed with Mr. Baynard and said that to hold in his favor "would constitute an unwarranted intrusion into an area in which the legislature has seen fit to act, albeit too late to be of comfort to plaintiff." *Id.* 399 So.2d at 1202. The court went on to refuse to retroactively apply state or federal age discrimination statutes to the case. The undersigned does not read even an implication in the *Baynard* opinion that had Louisiana's age discrimination act been on the books at the time Mr. Baynard was terminated that Mr. Baynard would also have a remedy under Article 2315. The First Circuit's opinion can more easily be read to indicate that it would defer to the legislature with respect to an issue on which the legislature has expressed its intent.

### District Courts: Split Decisions

Chief Judge Little has published an opinion in which he held, without discussing *Guillory*, that specific state anti-discrimination statutes are exceptions to the general employment at will doctrine and "eliminate the possibility of Article 2315 liability for employment discrimination." *Caletka v. State Farm*, 936 F.Supp. 380, 382 (W.D.La.1996). *See also, Ladner v. Alexander & Alexander, Inc.*, 94 CV 1996 (W.D.La.1996) (Little, C.J.) (dismissing claims under Article 2315 that alleged violation of the Family and Medical Leave Act). Chief Judge Little noted in the unpublished *Ladner* opinion that the language in *Guillory* upon which Plaintiff relies "announced a new and surprising rule of law that would apply to facts not actually before [the Fifth Circuit]. This was dictum." Judge Polozola, citing *Caletka* and *Baynard*, has also held that "Article 2315 does not create liability for employment discrimination." *Hornsby v. Enterprise Transportation Company*, 987 F.Supp. 512, 515 (M.D.La.1997).

Other district courts, however, have applied the *Guillory dictum* and refused to dismiss such claims. *See Ray v. Liberty Life Ins. Co.*, 94 CV 0226 (W.D.La.07/14/95) (Hunter, J.); *Roper v. Exxon*, 97–790–A (M.D.La.11/24/97) (Parker, J.); *Israel v. Industrial Specialty Contractors, Inc.*, 95–527–A (M.D.La.01/12/96) (Parker, J.). None of these district court opinions find any other support for the cause of action beyond the *dictum* in *Guillory*. Judge Hunter stated in *Ray* that he found "little or no support [in *Gil* ] for the Fifth Circuit's expansion of Article 2315." [3]

### Statutory Interpretation: Specific Over General

■ The issue before the court is whether the Supreme Court of Louisiana would interpret Article 2315 to provide an additional remedy for violations of the ADEA. Plaintiff has cited no Louisiana decision that has actu-

**3.** *See also* Wilson, *Fired: Tort Liability for Wrongful Discharge in Louisiana*, 45 La.B.J. 254 (1997). Mr. Wilson takes the position in his article that tort liability under Article 2315 follows when an employer fires an employee in violation of a statutory prohibition. He states that the advantage of including an Article 2315 claim in a discriminatory discharge suit "is precisely the potential of recovering a sizeable general damages award, which often is not available under the various statutes authorizing relief for unlawful termination." *Id.* at 256.

ally held that the violation of a federal or state employment discrimination statute creates a concomitant tort claim under Article 2315. He has also cited no case that would indicate that the Louisiana courts are no longer strictly applying the employment at will doctrine except in cases of an employment contract or when a specific statutory limitation like the ADEA or Title VII is applicable. The absence of such authority and the application of principles of statutory interpretation compel a conclusion that the Supreme Court would not interpret Article 2315 in such a fashion.

A well-known principle of statutory construction is that when there is both a general law and a specific law that address the same subject matter, the more specific legislative enactment should govern. *Kennedy v. Kennedy*, 699 So.2d 351, 358 (La.1996) (in dispute over a usufructuary's right to cut timber, general Code articles regarding use of fruits by usufructuary must bow to specific article governing timberlands); *Horil v. Scheinhorn*, 663 So.2d 697, 699–700 (La.1995) (medical malpractice plaintiff's case dismissed for failure to comply with specific statutory provisions applicable to his case although he complied with general provisions); *Lieber v. Caddo Levee District*, 660 So.2d 188 (La.App. 2d Cir.1995) (DOTD's authority to acquire property for "limited-access highways" was governed by specific statute regarding same, rather than general statute applicable to acquisitions for "any highway").

The undersigned is of the opinion that the Louisiana legislature intended that in cases of age discrimination a plaintiff's state law remedies are limited to those permitted by the claim-specific LADEA, rather than the broad, general tort remedy of Article 2315. It would serve little purpose for the Louisiana legislature to specifically provide in § 313 of the LADEA that victims of age discrimination can under state law recover only "back pay, benefits, reinstatement, reasonable attorney's fees, and court costs" if the plaintiff can merely invoke Article 2315 and automatically gain access to the full range of general and compensatory damages available under tort law. When a plaintiff invokes Louisiana law to support a claim of age discrimination, the court must apply the more specific LADEA and its tailored remedial scheme rather than the broad tort laws and their unlimited potential for compensatory damages. This Plaintiff makes no reliance upon the LADEA or any Louisiana law other than Article 2315.

To adopt the rule advocated by Plaintiff would render the legislature's enumeration of recoverable damages completely meaningless. It would also open the door to an argument that, by mere invocation of Article 2315, all employers and even supervisors are suddenly subject to unlimited tort liability under the substantive prohibitions of the ADEA, LADEA, Title VII and similar federal and state statutes that apply on their face only to employers of more than a minimum number of employees. After all, Article 2315 has no such limitation. That argument has already been raised in *Caletka, supra.* It is also inevitable that a plaintiff would argue that he may circumvent the specific limitation periods and administrative prerequisites to suit under an anti-discrimination statute by merely styling his suit as a claim under Article 2315, which has a generous one-year prescriptive period and no administrative exhaustion requirement. Other statutes that, like the LADEA or Title VII, limit the kinds or amount of damages recoverable for a violation would effectively be rewritten by the federal judiciary to permit recovery of all forms of compensatory damages available under Article 2315.

If the legislature had intended such results it would have merely enacted substantive duties and prohibitions, and not bothered to waste any ink or debate on administrative requirements, limitations periods and limited remedies. Alternatively, the state legislature could have chosen not to enact any specific legislation to address age discrimination and left it to the courts to decide whether they should fashion an Article 2315 remedy for age discrimination as part of the state's tort jurisprudence. The legislature chose instead to enact the very specific LADEA to protect persons from age discrimination, manifesting its intent that those persons who seek re-

dress under Louisiana law find their remedy in that legislation.

The Louisiana legislature frequently imposes duties on employers and specifies the damages, if any, recoverable in a civil action for a breach of the duty. *See* La.R.S. 42:1169 (whistle blower public employees limited to reinstatement and recovery of income and benefits lost during period of discrimination); La.R.S. 23:1361(capping recovery for employees fired for filing workers compensation claim to one year's earnings); and La. R.S. 23:966 (prohibiting discrimination against employees who smoke and imposing $250 civil fine for violation). Certainly, the legislature did not intend that a person could state a state law claim that abrogates those limits by mere invocation of Article 2315. The same rationale prohibits an Article 2315 claim for age discrimination that would abrogate the LADEA's limitation on recoverable damages.

### Analogous Reasoning Is Used In § 1983 Jurisprudence

Federal courts have employed similar reasoning to preclude the use of 42 U.S.C. § 1983 to eviscerate the administrative requirements and limited remedies provided for by specific federal acts. Section 1983 provides, *inter alia*, a cause of action against persons acting under color of state law who deprive a person of rights afforded by federal "laws". Read literally, § 1983 would grant a cause of action for violation of any federal law. The courts have consistently held, however, that the general § 1983 is supplanted when a specific federal law provides remedial devices sufficiently comprehensive to demonstrate congressional intent to preclude the intent of a remedy under § 1983. When the specific statute has its own remedial scheme, the plaintiff is ordinarily precluded from bypassing that scheme and asserting a derivative claim of the specific statute through § 1983. *See Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981) (elaborate enforcement provisions precluded implied private right of action and supplanted any remedy that would otherwise be available under § 1983); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539 (5th Cir.1997) (public sector employee may assert claims of employment discrimination under both Title VII and § 1983 only if the § 1983 claim is supported by a federal right independent of Title VII); and *Lakoski v. James*, 66 F.3d 751 (5th Cir.1995), cert. denied, —— U.S. ——, 117 S.Ct. 598, 136 L.Ed.2d 525 (1996) (plaintiff could not assert claim under Title IX or derivatively through § 1983 when Title VII provided specific remedial scheme for the claim). These decisions are obviously not controlling as to Louisiana law, but they demonstrate how the federal courts have effectively addressed very similar issues that arise with some frequency in the federal system.

### Conclusion

█ This opinion should not be read to mean that an employee may never state a claim against an employer under Article 2315. A plaintiff seeking to proceed against his employer under Article 2315 need only allege the breach of a legally recognized duty (such as the prohibition against intentional infliction of severe emotional distress) for which the state legislature has not specifically provided a remedial scheme. This Plaintiff does not urge any basis for liability under Article 2315 other than derivative application of the ADEA. The Louisiana legislature has enacted a specific remedial system, in the form of the LADEA, for redressing claims of age discrimination, for which limited remedies are available. The specific LADEA supplants any state law claim for age discrimination under the more general Article 2315.

Accordingly,

**IT IS RECOMMENDED** that Louisiana Riverboat Gaming Partnership's **Motion for Partial Dismissal (Docket No. 19)** be **GRANTED IN PART** by dismissing Plaintiff's claims for compensatory damages under the ADEA and by dismissing plaintiff's claims under La.Civ.Code Article 2315.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court,

unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected—to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.,* 79 F.3d 1415 (5th Cir. 1996) (en banc).

July 23, 1998.