735 So.2d 680 (1999)
Eligah TOLLIVER, Plaintiff-Appellant,
v.
CONCORDIA WATERWORKS DISTRICT #1, Defendants-Appellee.
No. 98 00449.
Court of Appeal of Louisiana, Third Circuit.
February 10, 1999.
Rehearing Denied April 14, 1999.
Writ Denied July 2, 1999.
*681 Randall Gordon Wells, Rodney Messina, Baton Rouge, for Eligah Tolliver, Plaintiff-appellant.
Linda Lee Kincaid, Vidalia, for Concordia Waterworks District # 1, defendant-appellee.
BEFORE: THIBODEAUX, COOKS, WOODARD, DECUIR, and PETERS, Judges.
COOKS, J.
Eligah Tolliver ("Tolliver") appeals the trial court's summary dismissal of his suit against Concordia Waterworks District # 1 ("District"). The suit alleged Tolliver's constitutional rights were violated when the District terminated his employment without affording him a pre-termination hearing. For reasons which follow, we affirm the trial court's decision.

BACKGROUND FACTS
Tolliver was employed as a maintenance person/meter reader/backhoe operator with the District from April, 1980 until July, 1996 when he was terminated. The District is a governmental employera political subdivision of the State of Louisiana. Tolliver was orally hired; no written contract was ever executed by the parties. He was hired for an indefinite period of time and he was free to quit his job at any time. Tolliver received an hourly wage for the work he provided. He never renegotiated the conditions of his employment with the District.
On July 28, 1996, Tolliver was "on call," and required to carry a pager in order to respond quickly to water system problems or failures. When the pager sounded, Tolliver's immediate supervisor (Charles Renfrow) instructed him to telephone the pager company to receive information and direction regarding possible interruption and restoration of water service to customers. When Renfrow was called by the pager company because Tolliver did not answer the page on the date in question, Renfrow contacted Tolliver to inquire why he had not responded. Tolliver claimed that the pager had not beeped. Because this was the second time Tolliver allegedly had not answered the pager while on call, Renfrow terminated his employment. On August 5, 1996, the District sent Tolliver a letter explaining that his job had been terminated for twice failing to respond to a call on the pager. The District further advised Tolliver that he could speak to the Board regarding his termination at its next regular meeting scheduled for August 20, 1996, but Tolliver failed to appear.

PROCEDURAL HISTORY
On April 28, 1997, Tolliver filed suit against the District seeking damages and asserting he was unlawfully terminated from his employment. Because the District did not afford him a pre-termination hearing, the suit alleged, inter alia, violation(s) of Tolliver's constitutional rights to substantive and/or procedural due process guaranteed by Fourteenth Amendment to the Constitution of the United States and/or by Article 1, §§ 2 and/or 4 of the Louisiana Constitution of 1974.
The District responded by filing a Motion for Summary Judgment with supporting memorandum seeking dismissal of plaintiffs suit. Tolliver filed pleadings opposing the District's Motion for Summary Judgment and he motioned the court for *682 Partial Summary Judgment on the liability issue.
The trial court granted the District's Motion for Summary Judgment finding the United States Fifth Circuit Court of Appeals' holding in Guillory v. St. Landry Parish Police Jury, 802 F.2d 822 (5th Cir.1986), cert. denied, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987) was dispositive in this instance.

STANDARD OF REVIEW
In Hartman v. Vermilion Parish Police Jury, 94-893, p. 4 (La.App. 3 Cir.3/1/95); 651 So.2d 476, 478, writ denied, 95-0778 (La.5/5/95); 654 So.2d 326, this Court stated:
Appellate courts review summary judgements de novo, applying the same standards of review used by trial courts in rendering the judgements at the district court level. Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La. 1994). A motion for summary judgement is properly granted if there is no genuine issue of material fact, and the mover is entitled to judgement as a matter of law. La.Code Civ.P. art. 966. The mover bears the burden of proving that no genuine issue of material fact exists and that he is entitled as a matter of law to the requested judgement. All summary judgement evidence is scrutinized closely and any inferences to be drawn from it are viewed in a light most favorable to the party opposing the motion. In addition, all allegations made by the opposing party are taken as true and any doubt arising between his allegations and the mover's is resolved in his favor. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La.App. 3 Cir. 1993).

LAW AND ANALYSIS
Louisiana's law on employment at will is codified in Louisiana Civil Code Article 2747 which provides:
A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
The Supreme Court in Pitcher v. United Oil & Gas Syndicate, 139 So. 760, 761, 174 La. 66 (1932), enunciating the principle underlying this doctrine, stated:
An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume almost juris et de jure that he did not so intend. And if the contract of employment be not binding for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of "mutuality."
When employment is for an indefinite term, it is terminable at the will of either the employer or the employee. Williams v. Delta Haven, Inc., 416 So.2d 637 (La. App. 2 Cir.1982); Pechon v. National Corporation Service, 100 So.2d 213, 234 La. 397 (1958). "Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." Williams, 416 So.2d at 638. "Employment at will" applies even to government employees who are not protected by civil service provisions as well as to private industry employees. See Mix v. University of New Orleans, 609 So.2d 958 (La.App. 4 Cir.1992), writ denied 612 So.2d 83 (1993). There are no "public policy exceptions" to this doctrine. Guillory, 802 F.2d 822.
Employment at will stands in stark contrast to those relationships which bestow upon certain employees a property interest and thereby fall within the purview of the due process clauses found in the United States and Louisiana Constitutions. Such an interest "exists only where *683 the employee has an express or implied right to continued employment." White v. Mississippi State Oil and Gas Board, 650 F.2d 540, 541 (5th Cir.1981). These clauses provide "no person shall be deprived of life, liberty, or property without due process of law." Article 1, §§ 2, 4 and 22 of the Louisiana Constitution of 1974 also declares that property cannot be taken except by due process of the law, and that the courts are open to ensure such protection. Employees, who are not at-will employees, and thus can only be dismissed for just cause, have a sufficient property interest in continued employment to warrant Fifth and Fourteenth Amendment protection. Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). This property interest, however, is not spawn from the Constitution; rather, the United States Supreme Court in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) made clear that the right's existence is entirely dependent on state statute, local ordinance or an express or implied contract. See also Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). It is this property interest that entitles the employee to due process of the law and typically requires that they are afforded a pre-termination hearing.
Tolliver does not urge he acquired such right from a state statute, a local ordinance, or an express contract. But Tolliver maintains that the sources specifically mentioned in Sindermann are illustrative and not exhaustive. He directs our attention to the following passage found in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a companion case to Sindermann, defining a property interest:
To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
. . . .
Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state lawrules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
And he notes in Sindermann the Supreme Court also stated:
We have made clear in Roth, ... that `property' interests subject to procedural due process protection are not limited by a few rigid technical forms. Rather, `property' denotes a broad range of interests that are secured by existing rules or understandings.

A person's interest in a benefit is a `property' interest for due process purposes if there are rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. (Emphasis Ours.)
Sindermann, 408 U.S. at 601, 92 S.Ct. 2694 (citations omitted). Based on his reading of these cases, Tolliver asserts that property interests also may arise out of rules or mutually explicit understandings that may be statutory in nature, or may arise out of regulations, orders or policies and procedures of the employer. Tolliver contends he acquired a protected property interest in continued employment by virtue of the District's just cause termination policy. To prove the existence of such policy, Tolliver relies on the following excerpt from the deposition testimony of Renfrow:
A: It's a problem with us losing all our water, because we only got 6 hours of water at any given time in a tank. When you do that the State Board of Health has got you and everybody else has got you when you go down. It's got to be checked when the time comes.
Q: Okay. So did youso if there is an infraction committed by the employee, *684 then you're saying on the severity of the infraction will determine how much discipline that's meted out?
A: Well, yes sir. Some things could be more than others, yes, sir.
Q: Is thatare those rules written anywhere?
A: No, sir.
Q: How does a personlet me start again. How does a employee know about the rules pertaining to discipline and or termination for cause?
A: Working with this water system, a person knows that when that water goes down, you better be on your job. That'swhen you first go to work there you know that. You know, he knows that up front.
Q: Okay. You mean that's just common knowledge?
A: Common knowledge
Q: By working on the job?
A: By working on the job, they know how severe it is and everything.
More particularly, Tolliver urges the trial court erred in failing to find that the District's alleged "just cause termination policy" was a "mutually understood rule or policy" which "modified" his initial at will employment contract or impliedly vested him with a protected property interest to continued employment. This interest, he maintains, could not be divested by the District absent a pretermination hearing and the existence of "just cause" to discontinue his employment.
We do not quarrel with Tolliver's more expansive reading of the holdings in Sindermann and Roth. Although Louisiana Civil Code Article 2747 allows an employer to discharge employees at will, this provision is not without limit. Nothing in this Article forbids a public or private employer, by statute or contract (express or implied), from granting its employees "some form of guarantee" to continued employment. Whether such a guarantee was conveyed in this instance is the controlling question.
Relying on Guillory, the trial court found Louisiana law does not prevent a government employer, here the District, from discharging its employees at will. But this rationale, were it the only one which could be offered for rejecting Tolliver's position, begs the question. It is true, generally, employment relationships in Louisiana vis a vis employer and employee are presumed "at will;" thus either party may terminate the relationship. And it also is true in such instances, governmental employers possess the same free will to terminate their employees as do employers in the private sector. "Unfairness" or "unreasonableness" in terminating an employment relationship are not recognized exceptions to the employment at will doctrine. Williams, 416 So.2d 637. But neither these trues nor the holding in Guillory make immaterial facts which may tend to evidence that a particular employer, governmental or private, adopted certain rules, regulations, or policies which may have cause its employees to expect continued employment absent certain transgressions. But this expectation must be more than unilateral; it must be mutual to create a "legitimate claim of entitlement" by the employee to continued employment. Roth, 408 U.S. 564, 92 S.Ct. 2701. Only in the latter instance does a protected property interest exist which requires an employer to afford such employee a pretermination hearing. An employee's abstract concern or desire to be treated "fairly" and "reasonably" in being terminated will not defeat summary dismissal of his complaint. Instead, he must present some evidence to overcome the "at will" presumption, i.e., evidence tending to show the employer intended, expressly or impliedly, by adoption of certain rules, regulations, or policies to grant him the right to continued employment subject to certain conditions or certain specific understandings existed between he and the employer sufficient to cause him to reasonably expect such employment.
*685 The only evidence Tolliver presented to overcome Louisiana's "at will" employment presumption was abbreviated expressions by Charles Renfrow that it was "common knowledge" certain infractions on the job "could" result in more severe discipline and a "person knows that when the water goes down, you better be on your job." Precisely what this evidence establishes is not clear to us; but we are certain it is not sufficient to overcome the presumption that the parties' relationship in this instance was "anything more than at will" and, it is woefully lacking in weight to create a genuine issue of fact regarding the existence vel non of a "mutual understanding" sufficient to support Tolliver's claim.

DECREE
For the above reasons, we affirm the lower court's decision granting the District's Motion for Summary Judgement.
AFFIRMED.
THIBODEAUX, J., dissenting and assigns written reasons.
THIBODEAUX, J., dissenting.
Because the plaintiff had an expectation of continued employment pursuant to an oral rule or understanding, he had a legitimate property interest in his job, absent sufficient just cause for his dismissal. As he properly points out, his expectation of continued employment flows from the Fourteenth Amendment of the United States Constitution and Article 1, Sections 2 & 4 of the Louisiana Constitution. The record, in my view, is sufficiently detailed to show that the expectation of continued employment was more than unilateral. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Furthermore, I do not believe that there is presumption that the parties' relationship was "anything more than at will." Reliance on such a presumption shifts the burden of persuasion to Tolliver. In my view, it is incumbent on the government employer to show that this is an "at will" situation. It failed to do so, particularly in view of the oral policy which required a just cause determination before an employee's termination.
At the very least, there are genuine issues of material fact in dispute which may tend to create a legitimate claim of entitlement to continued employment of the plaintiff. At this present juncture, we should refrain from placing any weight or lack of weight, as the majority does, on whether the expressions by Mr. Renfrow established or did not establish an oral "just cause" policy. That is a genuine question of fact which should be resolved after a full trial.
For the following reasons, I respectfully dissent.