**Irene MAYES,**

v.

**OFFICE DEPOT, INC.**

**Civil Action No. 01–1273.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

Sept. 19, 2003.

Hersy Jones, Jr., Shreveport, LA, for Plaintiff.

Eve B. Masinter, Lance A. Bowling, McGlinchey Stafford, New Orleans, LA, Stephanie G. John, McGlinchey Stafford et al, Houston, TX, for Defendant.

## MEMORANDUM RULING

HICKS, District Judge.

This matter is before the Court on Office Depot's Motion for Summary Judgment [Doc. 36] pursuant to Fed.R.Civ.P. Rule 56(b). Defendant moves for an order dismissing all of Plaintiff's claims with prejudice. Irene Mayes, Plaintiff in this matter, opposes the motion on the basis that there exists a genuine dispute of material fact and that Office Depot is not entitled to judgment as a matter of law. For the following reasons, the Court hereby GRANTS Office Depot's Motion for Summary Judgment [Doc. 36] and DISMISSES Plaintiff's Amended Complaint [Doc. 2] with prejudice.

## PROCEDURAL BACKGROUND

On July 3, 2001, Plaintiff Mayes filed a complaint [Doc. 1] against her former employer, Office Depot, for discrimination for failure to promote in violation of 42 U.S.C. § 1981 and Louisiana Revised Statute 23:301 *et seq.*, Louisiana Civil Code Article 2315, intentional infliction of emotional distress, negligent supervision, breach of contract, and state and federal constitutional claims. The complaint was amended [Doc. 2] to include charges of discrimination under Title VII of the Civil Rights Act of 1964 and 1991, as amended (hereinafter "Title VII"), the Age Discrimination in Employment Act (hereinafter, "ADEA"), the Equal Pay Act; and the Louisiana Civil Code 2320. Mayes originally named two additional defendants, but when the case was dismissed for failure to prosecute, Plaintiff obtained reinstatement of the case only as to Office Depot. [Doc. 4, 7].

Defendant Office Depot moved for dismissal of Mayes' ADEA and state law claims for failure to state a claim. [Doc. 11]. Thereafter, the Court dismissed Plaintiff's state law Article 2315 claim to the extent that it is inconsistent with *Gluck v. Casino America*, 20 F.Supp.2d 991 (W.D.La.1998) and her claims that are based solely on state law negligence, and declared that no state or federal constitutional law claims were plead. [Doc. 23]. The following remaining causes of action before this Court are addressed by Office Depot's Motion for Summary Judgment: discrimination based on race, sex, and age in violation of Title VII, the ADEA, 42 U.S.C. § 1981, and Louisiana's anti-discrimination law; violation of the Equal Pay Act; intentional infliction of emotional distress; and breach of contract.

## FACTS

### I. PLAINTIFF'S EMPLOYMENT HISTORY

Plaintiff, Irene Mayes, began working at the Office Depot location on Jewella Avenue in Shreveport in 1992. *Mayes Dep.,* p. 222. Plaintiff's date of birth is May 10, 1954, so she was approximately 38 years old when she was hired by Office Depot in 1992. *Id.,* pp. 15, 62. Plaintiff worked under the supervision of several store managers and district managers over the course of her employment. *Id.,* pp. 71–76. Lori Oswalt was Plaintiff's store manager during the last years of Plaintiff's employment and remained in that position until just before Plaintiff's resignation. *Mayes Dep.,* p. 75; *Oswalt Aff.,* ¶ 1. Tim Green

became district manager of the area encompassing the Jewella Avenue store in May, 1998, and occupied that position at the time of Plaintiff's resignation. *Green Dep.*, pp. 8–9, 50; *Green Aff.*, ¶ 1.

Plaintiff began work as a part-time cashier, was promoted to lead cashier within a few months and was subsequently promoted to be one of the store's customer service managers in 1993. *Mayes Dep.*, pp. 62–63. For several months at the end of 1999, Plaintiff ceased to perform the duties of customer service manager (retaining that title however) and worked in a newly-created "networking" position. *Id.*, pp. 84–85. When the networking position ended, Plaintiff resumed her duties as a customer service manager. *Id.*

In February of 2000, Plaintiff participated in a sales transaction which raised questions in Mr. Green's mind about Plaintiff's business judgment. *Green Dep.*, pp. 86–87; *Mayes Dep.*, p. 145. Ms. Oswalt also expressed that Plaintiff's involvement in that transaction represented a "bad judgment call." *Id.*, p. 266. Mayes herself stated: "I made a bad judgment call. I should not have participated." *Id.*, p. 151. At the conclusion of the company's investigation of that transaction, Plaintiff was counseled for her conduct. *Id.*, p. 151.

Though Plaintiff also was permitted to perform some assistant manager remerchandizing duties, Plaintiff continued to be employed as a customer service manager until she resigned from Office Depot on July 3, 2000. *Mayes Dep.*, pp. 64, 228. In July of 2000, Plaintiff submitted a resignation letter to Office Depot. Mr. Green requested that she reconsider her resignation, but Mayes rejected Mr. Green's request and stopped working at Office Depot on July 6, 2000. *Id.*, p. 24. She began

working at her new job, which she obtained prior to resigning from Office Depot, on July 10, 2000. *Id.*, p. 24.

## II. THE ALLEGED DISCRIMINATORY ACTIONS

Plaintiff filed the Complaint initiating this proceeding on July 3, 2001. [Doc. 1]. In the EEOC Charge and in the instant Complaint, Mayes alleges that she was discriminated against when Office Depot promoted five individuals to assistant manager instead of her. *EEOC Charge of Discrimination, Amended Complaint* [Doc. 2].

Plaintiff wanted to progress farther than customer service manager and communicated her desire to become an assistant manager to many other Office Depot employees, including Ms. Oswalt and Mr. Green. *Mayes Dep.*, pp. 84, 296. To obtain a promotion to the position of assistant manager in 1999 and 2000, it was not necessary to complete any formal application process. *Green Aff.*, ¶ 3. Though there does not seem to have been written criteria, Office Depot claims that promotional decisions were based on knowledge of an internal candidate's aptitude, gained through observation of the candidate and interaction with the candidate, education and previous experience.[1] *Id.*, ¶ 3. When an individual was hired from outside the company to be an assistant manager, such decisions were based on interviews of the candidates and consideration of experience, education and skills made known during the interview process. *Id.*, ¶ 3. The store manager, the district manager and the district manager's supervisor, in consultation with each other, promoted or hired assistant managers. *Green*

---

1. Mayes claims that she was told the requirements for becoming an assistant manager were that, "you have to be team player and a leader. You have to have a high school diploma and have worked on the front end for at least six months as a customer service manager." *Mayes Dep.*, p. 190.

*Dep.,* p. 93; *Green Aff.,* ¶ 3; *Oswalt Aff.,* ¶ 2.

Mayes felt that she should have been promoted to the assistant manager position rather than the following individuals: David Mitcham, Chris Shadrix, Denise Cashion, Michael Shane Cheatham, and Ron Cheatham. *EEOC Charge of Discrimination, Amended Complaint* [Doc. 2]. David Mitcham (white male, date of birth not given) was promoted to assistant manager before Tim Green became district manager in 1998. *Mayes Dep.,* pp. 180, 196. Chris Shadrix (white male, born March 15, 1971) was promoted to assistant manager of the Jewella Avenue store on January 30, 2000. *Green Aff.,* ¶ 7. Denise Cashion (white female, born September 3, 1959) was promoted to assistant manager of the Bossier City store on February 27, 2000. *Id.,* ¶ 7. Michael Shane Cheatham (white male, born April 3, 1975) was re-hired into the position of assistant manager of the Bossier City store in late February, 2000. *Green Dep.,* pp. 67, 161–62; *Green Aff.,* ¶ 9. Ron Cheatham (white male, born November 24, 1968) was hired as an assistant manager for the Office Depot store on 70th Street in Shreveport on September 4, 2000, *Green Aff.,* ¶ 10.

Plaintiff was not selected for any of these assistant manager positions. Mr. Green stated that though he "encouraged her in things that [he] thought she should do," he did not believe Plaintiff possessed the skills necessary to become an assistant manager. *Green Dep.,* pp. 7–8,108. Ms. Oswalt also encouraged Plaintiff to pursue her desires to advance within the company. *Oswalt Aff.,* ¶¶ 4, 6. However, Ms. Oswalt did not recommend to her supervisor, Mr. Green, that Plaintiff be promoted to the position of assistant manager. *Green Dep.,* pp. 31–37, 56; *Oswalt Aff.,* ¶ 5. Plaintiff admits she was told by Ms. Oswalt that it was necessary to complete GOALS [2] in order to advance at Office Depot. *Mayes Dep.,* p. 106. Nevertheless, Plaintiff completed the first part of GOALS, but not the second part. *Id.,* p. 108.

Mr. Green's stated reason for not promoting Plaintiff to assistant manager was that he did not see Mayes fulfilling all of the necessary management competencies including: self-initiative; managing, motivating, and developing associates; business judgment; and business results orientation. *Green Dep.,* pp. 7–8. Mr. Green also had concerns because of Plaintiff's communication to Ms. Oswalt that she was "burnt out" on the front end. *Green Aff.,* ¶ 6. As he explained: Assistant managers have to work on the front end from time to time. Additionally, the assistant manager position is more stressful and carries with it more of a burden than the customer service manager position Irene Mayes occupied. Accordingly, Irene Mayes' expression of these feelings was another indication that she was not qualified to be an assistant manager at Office Depot. *Id.* Moreover, Mayes had given Tim Green the

2. The GOALS process was a program Office Depot instituted to develop its associates. *Green Aff.,* ¶ 4. There were two parts of the GOALS program. *Mayes Dep.,* p. 108. GOALS I was intended to introduce and educate hourly associates (entry level employees) on the skills needed to move into hourly manager (first line supervisory) positions. GOALS II was intended to introduce and educate associates on the skills needed to move into higher levels of manager (including assistant store manager). The GOALS program was also an indicator of an associate's motivation and initiative. Any associate interested in participating in the GOALS process was given the opportunity to do so, upon expressing that interest to his or her manager. GOALS was a self-paced program. No associate was required to complete either portion of GOALS; however, associates seeking promotions within the company made themselves more competitive for those promotions by completing GOALS. *Green Aff.,* ¶ 4.

impression that she was not knowledgeable about technology, which represents a large part of Office Depot's retail business. *Green Aff.*, ¶ 11. He also learned from Lori Oswalt, Mayes' store manager, that Mayes was not able to provide customers with product-specific assistance on the sales floor in the technology area, even though she was a customer service manager. *Id.* Mr. Green understood Ms. Oswalt to have the same general types of concerns about Plaintiff's readiness to be an assistant manager. *Green Dep.*, pp. 34–37, *Oswalt Aff.*, ¶ 4.

Plaintiff submitted a charge questionnaire to the EEOC in late June, 2000, and signed the official charge document in November 2000. *Mayes Dep.*, pp. 278–79, 284, 289–90. Plaintiff claims that she met the criteria as she understood it for the customer service position. Therefore she contends she was qualified for the position and Office Depot's failure to promote her was discriminatory.

## LAW AND ANALYSIS

### I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. *Liquid Air Corp.,* 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Kee v. City of Rowlett Texas,* 247 F.3d 206, 210

(5th Cir.2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. *Liquid Air Corp.,* 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. To that end, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Ameristar Jet Charter v. Signal Composites,* 271 F.3d 624, 626 (5th Cir.2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. *Liquid Air Corp.,* 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Id.* Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). With these principles in mind, we now turn to a review of the claims at issue.

### II. TITLE VII, ADEA, AND STATE LAW DISCRIMINATION CLAIMS

#### A. Procedural Considerations

##### 1. *Temporal Scope of Federal Claims*

■■■ Filing a timely charge of discrimination with the EEOC is a precondition to filing a civil action in federal court. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234

(1982). A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180 days after the alleged discriminatory employment occurred. 42 U.S.C. s 2000e–5(e)(1). In "deferral states" this filing period is extended to 300 days if there is also a discrimination claim based on state law. Louisiana is a deferral state, and therefore the 300 day filing period applied. La. R.S. 23:303.

■ The time to file a claim of discrimination with the EEOC, "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." A one-time employment event, including the failure to hire, is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued." *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir.1998). These "discrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment" and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine. *Id.* An employee who claims to be the victim of a discriminatory failure to promote is put on notice that his rights have been violated at the time the adverse employment decision occurs, and must therefore bring the claim within 300 days of the adverse decision. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir.2001)(failure to promote claim properly dismissed because plaintiff failed to show pretext). The instant complaint is a failure to promote claim which cannot be saved by the continuing violation doctrine. Therefore, the date 300 days prior to the filing of the EEOC charge is the earliest date on which an incident of discrimination could be considered.

■ Severing of the employment relationship ordinarily terminates discrimination against the severed employee. *Otstott v. Verex Assurance, Inc.*, 481 F.Supp. 1269, 1270 (N.D.Tex.1980)(collecting cases). Thus, the closing date for Office Depot's alleged discriminatory behavior is Mayes' date of resignation.

■ Mayes initiated her EEOC charge of discrimination for failure to promote June 1, 2000. *Mayes Dep.*, pp. 278–79. The date 300 days prior to the filing of the EEOC charge is August 20, 1999, which is the earliest date on which an incident of discrimination could be considered. Mayes resigned on July 3, 2000 and worked until July 6, 2000. *Id.*, pp. 226–27. All alleged discriminatory acts occurring prior to August 20, 1999 and after July 6, 2000 are prescribed. Therefore, the only promotions at issue in this lawsuit under federal discrimination laws are those of Chris Shadrix (January 2000), Denise Cashion (February 2000), and Michael Shane Cheatham (February 2000).

2. *Temporal Scope of State Claims*

■ Louisiana's anti-discrimination statute has a prescriptive period of one year during which a plaintiff must file her complaint under Louisiana Revised Statutes 23: 301 *et seq.* La. R.S. 23:303(D). This period may be extended by six months during the pendency of an administrative investigation of a claim of discrimination by the EEOC or the Louisiana Commission on Human Rights. La. R.S. 23:303(D). Therefore, the date 18 months prior to the filing of a complaint in state or federal court is the earliest date on which an incident of discrimination could be considered.

In the instant case, Mayes filed her lawsuit on July 3, 2001.[Doc. 1]. Because there was an administrative investigation into her charge of discrimination, the prescrip-

tive period in this case is 18 months. Plaintiff's state law discrimination claims based on events occurring prior to January 3, 2000 (18 months prior to the filing of the instant complaint) are prescribed. Therefore the only promotions at issue in this lawsuit under state discrimination laws are those of Chris Shadrix (January 2000), Denise Cashion (February 2000), and Michael Shane Cheatham (February 2000).

### 3. *Louisiana Notice* Requirement

Prior to filing a lawsuit under the Louisiana anti-discrimination statute, a plaintiff must give the proposed defendant written notice that she believes she has been discriminated against at least 30 days before initiating court action. La. R.S. 23:303(C). Filing an EEOC charge of discrimination satisfies this notice requirement,[3] but limits the state claim to the alleged discrimination detailed in the EEOC charge.[4]

Mayes did not give Office Depot separate written notice of her state law discrimination claims prior to commencing this suit. However, her EEOC charge, which was dual-filed with the Louisiana Commission on Human Rights, gave Office Depot notice that Mayes was alleging discriminatory behavior which violated both federal and state law. Thus, Office Depot had notice of possible state claims and Mayes' state discrimination claims withstand this procedural hurdle. However,

because Mayes used the EEOC charge form to provide state notice, her state claims are hereby limited to those claims that were included in the charge.

### B. Substantive Law

#### 1. *Prima Facie Case*

 Mayes attempts to prove her discrimination claims by indirect evidence. As a result, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5] Under this three-part scheme, a plaintiff must first present a *prima facie* case of discrimination. A plaintiff satisfies this initial burden by showing that: (1) she belongs to a protected group; (2) she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002). Mayes can make out a *prima facie* case on some of her claims. First, Mayes belongs to several protected groups, she is an African American woman, who was over the age of 40 at the time of the alleged discrimination. *Mayes Aff.*, ¶ 22. Second, based on the criteria she believed were in place,[6] Mayes was qualified to become an assistant manager. *Id.*, ¶ 19. Third, Mayes suffered an adverse employment action

---

**3.** *Manzella v. United Parcel Serv., Inc.*, No. 02–1800, 2002 WL 31040170, at *4 (E.D.La. Sept. 10, 2002)(citing *Pugh v. J.C. Penney*, No. 95–3846, 1996 WL 263219, at *5 (E.D.La. May 15, 1996) and *Snear v. Turnbull Cone Baking Co.*, No. 93–2761, 1994 WL 34031, at *3–4 (E.D.La. Jan. 31, 1994)). Cf. *Parquet v. Universal Health Servs., Inc.*, 2003 WL 145429 (E.D.La. Jan.17, 2003)(denying state discrimination claim where plaintiff filed EEOC charge, but failed to notice the defendant under as required by La. R.S. 23:303(C)).

**4.** *Parquet*, 2003 WL 145429 at *3–4.

**5.** Because Louisiana's anti-discrimination statutes are similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana courts have routinely looked to federal jurisprudence for guidance in interpreting state law. *LaBove v. Raftery*, 802 So.2d 566 (La.2001).

**6.** Mayes claims that she was told the requirements for becoming an assistant manager were that, "you have to be team player and a leader. You have to have a high school diploma and have worked on the front end for at least six months as a customer service manager." *Mayes Dep.*, p. 190.

when she was not promoted to the assistant manager position. Finally, rather than promoting Mayes to the assistant manager position, Office Depot promoted: Chris Shadrix, a white male under 40 years old; Denise Cashion, a white woman over 40; and Michael Shane Cheatham, a white male under 40 years old. Thus, Mayes has demonstrated a *prima facie* case of race discrimination as to all three of the individuals, and a *prima facie* case of sex and age [7] discrimination as to Chris Shadrix and Michael Shane Cheatham.

Mayes cannot demonstrate a *prima facie* case of discrimination on the promotion of Denise Cashion for sex or age discrimination because Ms. Cashion is a female and is over the age of 40.[8] Therefore Mayes' sex and age claims as they relate to the promotion of Denise Cashion are dismissed with prejudice.

### 2. *Nondiscriminatory Reason*

■■■■ Under the second part of the *McDonnell Douglas*[9] burden-shifting framework, once a plaintiff presents a *prima facie* case, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a, "legitimate, nondiscriminatory justification for its actions." *Price,* 283 F.3d at 720. Office Depot asserts that Mayes was not promoted to the position of assistant manager because her managers, Mr. Green and Ms. Oswalt, had serious concerns about various management competencies necessary to the performance of that position. Moreover, in every promotion at issue here, the record evidence is clear that Plaintiff simply was not the most competitive candidate available for promotion to assistant manager. *Green Aff.,* ¶¶ 8, 9, 17; *Oswalt Aff.,* ¶ 3. Office Depot has satisfied its burden under the *McDonnell Douglas* framework by presenting a legitimate business reason for promoting someone else in lieu of Mayes, the burden now shifts back to Mayes.

### 3. *No Showing of Pretext*

■■■■ Under the third part of the *McDonnell Douglas*[10] burden-shifting framework, once the defendant articulates a reason that, if believed, would support a finding that the action was nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out of the picture" and the plaintiff must carry the ultimate burden of proving intentional discrimination. *Evans v. City of Houston,* 246 F.3d 344, 350 (5th Cir.2001) (citations omitted). In making her showing on this ultimate question, the plaintiff can "rely on evidence that the employer's reasons were a pretext for unlawful discrimination," and the factfinder "may still consider the evidence establishing the plaintiff's *prima facie* case and

---

**7.** It is unclear whether Mayes has met the jurisdictional prerequisites to an Age Discrimination in Employment Act Claim since the "Age" box was not checked on her EEOC charge, nor was there a description of age discrimination in the EEOC charge's factual summary. See [Doc. 21]. However, the Court does not reach that issue here, because the claim is dismissed on other grounds.

**8.** The fact that Ms. Cashion is five years younger than Mayes is not probative. "The Fifth Circuit has previously stated that it is a close question whether [a plaintiff] can establish a *prima facie* case where ... only five years

separates the plaintiff and the current employee." *LeCompte v. Freeport–McMoran,* No. Civ. A. 94–2169, 1995 WL 313700 (E.D.La. Mar. 21, 1995) (Vance, J.)(granting defendant's motion for summary judgment on plaintiff's ADEA claim) (citing *Bienkowski v. American Airlines,* 851 F.2d 1503, 1506 (5th Cir.1988)).

**9.** 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668.

**10.** 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668.

inferences properly drawn therefrom." *Id.*

The sum of Mayes' evidence of pretext are the following contentions: (1) "Neither Office Depot or Tim Green had a written criteria which was used ... for selecting assistant managers." *Mayes Mem.*, p. 8; (2) Office Depot and Tim Green were biased. *Id.*, p. 6; (3) "Tim Green never gave Plaintiff a written list on [sic] items she should improve on in order to be promoted to assistant manager." *Id.;* (4) "[Tim Green] has never recommended an African American to assistant manager." *Id.;* and (5) Tim Green hired Chris Shadrix because he "wanted a big husky male." *Mayes Aff.*, ¶ 2. We take each of these allegations in turn.

a. Subjective Hiring Criteria

 Mayes contends that Office Depot's assertion that other candidates were more qualified must be pretext because Office Depots's hiring criteria were largely subjective. Mayes is correct in her assertion that Office Depot cannot, "defeat an employee's claim via summary judgment at the *prima facie* case stage by claiming that [s]he failed to meet entirely subjective hiring criteria." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir.2001). However, the Court in *Medina* continued, once past the *prima facie* stage, "an employer *can* make employment decisions based on subjective criteria." *Id.*(emphasis added). While recognizing that:

> subjectivity has a potentiality for abuse by those evaluators who would use it to shield improprieties in the selection process, possibly even as a pretext for discrimination ... as a general rule judges are not as well suited by training or experience to evaluate qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in the field of

endeavor for which the applicants under consideration are being evaluated.

*Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993). Thus, the mere fact that an employer uses subjective criteria is not sufficient evidence of pretext. *Odom*, 3 F.3d at 847; *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 882 (5th Cir.2003)(failure to promote claim properly dismissed because plaintiff failed to show pretext).

 A plaintiff can establish pretext and survive summary judgment by providing evidence that she was "clearly better qualified" than the employee selected for the position at issue. *Celestine*, 266 F.3d at 357. The question for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination, and evidence of the plaintiff's superior qualification is thus probative of pretext. *Deines v. Texas Dept. of Prot. & Regulatory Services*, 164 F.3d 277, 281 (5th Cir.1999). However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are, "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines*, 164 F.3d at 280–81. "Unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Odom*, 3 F.3d at 847.

Office Depot's use of subjective hiring criteria alone, will not establish pretext. Moreover, Mayes does not attempt to show that the other candidates were unqualified, or that she was better qualified. *Mayes Dep.*, pp. 194–95. Mayes only con-

tends that she was "as qualified as [they] were at the time." *Id.* (emphasis added). Showing that two candidates are similarly qualified does not establish pretext under this standard. *Price,* 283 F.3d at 723. Mayes' belief that she was only "as qualified"[11] as the candidates chosen as Assistant Managers, and the lack of evidence showing that she was "clearly better qualified" than those candidates fails to support a showing of pretext.

Alternatively, Mayes contends that Office Depot was not correct in evaluating her potential.[12] The fact that Mayes and Office Depot disagree about her qualifications to be an assistant manager does not create a reasonable inference that Office Depot's proffered justification was untrue. *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991). "Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue." *Id.*

Subjective hiring criteria, equivalent qualifications, and incorrect employee evaluations are not sufficient to show pretext. Mayes has not produced any non-conclusory evidence that would support her allegation that Office Depot's subjective hiring criteria was pretext and that the real reason she was not promoted was because of her age, race, and sex.

b. Mayes' Subjective Belief

■ Having failed to offer any evidence that she was "clearly better qualified" than the other applicants, Mayes relies on her own subjective belief that sex, race, and age motivated Office Depot, specifically Tim Green, in the promotion decision process. *Mayes Mem.,* p. 8. A discrimination plaintiff's own good faith belief that her protective characteristics motivated her employer's action is of little value. *Republic Refining,* 924 F.2d at 96. This Court is "not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief." *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 567 (5th Cir.1983). Therefore, Mayes cannot prove pretext with her own self-serving conclusions that Office Depot discriminated against her.

c. Disparate Treatment

■ Mayes next attempts to show pretext with evidence of disparate treatment. Mayes states that Tim Green treated her differently and unfairly because he did not provide her written evaluations regarding the problems with her performance, nor did he provide her written suggestions on how to increase her chances of being promoted. *Mayes Aff.,* ¶ 13, *Green Dep.,* pp. 91–92. This proves no actionable disparate treatment. To establish a claim of disparate treatment, Mayes must show that Office Depot gave preferential treatment to the other candidates under "nearly identical" circumstances. *Republic Refining,* 924 F.2d at 96–97 (5th Cir.1991) (citations omitted). Mayes offers no evidence to support that Green or any other Office Depot supervisor provided the other candidates with written evaluations of deficiencies or suggestions on how to improve

---

11. Even if Mayes had more work experience or longer tenure with the company, that alone would not establish that she is clearly better qualified. *Price,* 283 F.3d at 723 (5th Cir.2002)(citing *Nichols v. Lewis Grocer,* 138 F.3d 563, 568–69 (5th Cir.1998)).

12. Mayes claims that Office Depot used the untimely May disciplinary actions for the "low price guarantee" incident as a reason she wasn't promoted. *Mayes Mem.,* p. 9. However, it is not disputed that the actual incident took place in February 2000, prior to two of the alleged discriminatory failures to promote Mayes. *Id.*

their chances of being promoted. Therefore alleged disparate treatment will not support Mayes' claim of pretext.

### d. Statistical Evidence

█ Next, Mayes attempts to show pretext by pointing to Tim Green's alleged failure to promote African Americans to the Assistant Manager positions. This type of statistical evidence can assist in establishing a *prima facie* case, but it does not demonstrate that the reason advanced for failure to promote *her* lacked either substance or credibility. *Manning*, 332 F.3d at 882. As discussed more fully above, Mayes failed to provide evidence that she was clearly better qualified to be assistant manager than the individuals selected for the job. Nor has Mayes offered any evidence that Office Depot has a hidden agenda to not promote African Americans. Therefore, statistical evidence will not support Mayes' claim of pretext.

### e. Stray Remark

█ Finally, to show pretext in her sex discrimination claim, Mayes alleges that Oswalt said Green hired Chris Shadrix because he "wanted a big husky male." *Mayes Aff.*, ¶ 2. To be probative, allegedly discriminatory statements must be made by the relevant decision maker. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir.1996). Assuming Green made the remark, even though he was one of the decision-makers in the failure to promote, his "stray remarks" are insufficient to create an inference of sex discrimination. *Wyvill v. United Companies Life Insur. Co.*, 212 F.3d 296, 304 (5th Cir.2000). In order for an sex-based comment to be probative of an employer's discriminatory intent, "it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [sex] was a determinative factor ..." *Id.* (citations omitted). Green's remark is ambiguous at best, and is not probative on the ultimate question of sex discrimination. Notably, he hired a woman, Denise Cashion, to be an assistant manager soon after allegedly making the sexist comment. *Green Aff.*, ¶ 7. Therefore, this alleged stray remark will not support Mayes' claim of pretext.

### 4. *Mayes Fails to Meet the Ultimate Burden*

While Mayes has arguably presented evidence that Office Depot's explanation is pretextual, she has not presented sufficient evidence to support an inference that intentional discrimination was the real reason for Office Depot's employment decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In *Reeves*, the Supreme Court recognized that a *prima facie* showing, combined with evidence of pretext, may not always be enough to defeat judgment as a matter of law, stating that, "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred," the employer may be entitled to judgment in its favor. *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.[13] In the case at bar, Mayes has established a

---

13. *See* generally *Price*, 283 F.3d 715 (5th Cir.2002)(Plaintiff failed to present evidence from which a factfinder could infer racial discrimination); *Vadie v. Mississippi State University*, 218 F.3d 365 (5th Cir.2000)(Plaintiff's Title VII claim rejected for failure to present "a scintilla of evidence" that national origin played any role in the hiring decision); *Rubinstein v. Adm'rs. of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir.2000)(Plaintiff failed to meet his burden when his evidence to rebut the non-discriminatory reasons offered by his employer was not so persuasive so as to support an inference that the real reason was discrimination).

*prima facie* case of discrimination, but has failed to carry the ultimate burden of showing that Office Depot's proffered reasons for not promoting her were false and that the real reason was discrimination. For the reasons stated above, the Plaintiff's claims for discrimination under Title VII, the ADEA, § 1981, and state are hereby dismissed with prejudice.

## III. TITLE VII, § 1981 AND STATE LAW CONSTRUCTIVE DISCHARGE

### A. Temporal Scope of Claims

As discussed at length above, Plaintiff's Title VII and Louisiana anti-discrimination law constructive discharge claims are limited to the time period between August 20, 1999 and July 6, 2000. Plaintiff's § 1981 claim has a different limitations period. A § 1981 claim is best characterized as a tort under Louisiana law and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by La.Civ.Code art. 3492. *Taylor v. Bunge Corp.*, 775 F.2d 617, 618–19 (5th Cir.1985). The filing and processing of charges with the EEOC under Title VII does not toll the running of the state prescriptive period governing § 1981 claims. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465–66, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). This lawsuit was filed on July 3, 2001. [Doc. 1]. Therefore, Plaintiff's § 1981 claim, as it relates to events that occurred prior to July 3, 2000, is prescribed.

### B. Substantive Law

Plaintiff seeks redress under 42 U.S.C. § 1981 for her resignation, which she styles as constructive discharge, because of Office Depot's alleged continued discriminatory failure to promote. Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens. 42 U.S.C.

§ 1981(a); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996). Claims of racial discrimination brought under § 1981 are analyzed under the same evidentiary framework applicable to claims of employment discrimination brought under Title VII. *LaPierre*, 86 F.3d at 448 n. 2.

A resignation is actionable under Title VII and Louisiana anti-discrimination laws, allowing the plaintiff to seek compensatory damages for events after the resignation, if the resignation qualifies as a constructive discharge. To prove a constructive discharge, a plaintiff must establish that, "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir.1997). The burden is on the employee to prove constructive discharge. *Jurgens v. E.E.O.C.*, 903 F.2d 386, 390 (5th Cir.1990). In determining whether a reasonable employee would feel compelled to resign, we have considered the relevancy of the following events: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] ... *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.2001).

Discriminatory failure to promote alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Id.; See also Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir.1990)(Racial discrimination plaintiff's constructive discharge claim cannot survive summary judgment because he resigned before filing grievance or EEOC charge); *Landgraf v. USI Film Products,*

968 F.2d 427, 429–30 (5th Cir.1992)(Sexual harassment plaintiff's constructive discharge claim cannot survive summary judgment because she resigned after company took corrective measures). Even if the denial of promotion was discriminatory, it is not "a harbinger of [her] dismissal." *Jurgens*, 903 F.2d at 392. Moreover, where an employer discriminatorily denies a promotion to an employee, that employee's duty to mitigate damages encompasses remaining on the job. *Id.*

■ In this case, Mayes claims she was constructively discharged when Office Depot repeatedly failed to promote her and because she was humiliated by being passed over time and time again. *Mayes Mem.*, p. 4. Mayes claims that she was forced to resign, however she was clearly not pressed to leave. She had time to complete an application, be interviewed, and receive a job offer from her new employer before she resigned from Office Depot. *Mayes Dep.*, pp. 45–46. Neither a discriminatory failure to promote nor mere humiliation can support a case of constructive discharge. Combined with her failure to mitigate damages by staying employed, Mayes cannot survive summary judgment on her constructive discharge claim. Plaintiff's claims for constructive discharge under Title VII, Louisiana anti-discrimination laws, and § 1981 are hereby dismissed with prejudice.

## IV. EQUAL PAY ACT CLAIM

■ Mayes asserts a cause of action under the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d)(1). To establish a *prima facie* case for violation of the Equal Pay Act, the Plaintiff must establish that, "the employer pays workers of one sex more than workers of the opposite sex for equal work." *Corning Glass Works v. Brennan*, 417 U.S. 188, 191, 94 S.Ct. 2223,

41 L.Ed.2d 1 (1974). More specifically, Mayes must demonstrate that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *Id.* Mayes has not presented any evidence to show how she was paid, or that she was paid differently than any one else because of her race, age or sex. Mayes also failed to oppose Office Depot's Motion for Summary Judgment on her Equal Pay Act claim. Therefore, Mayes' claim arising under the Equal Pay Act of 1963, as amended, is dismissed with prejudice.

## V. LOUISIANA BREACH OF CONTRACT

■ Under Louisiana law, four elements are necessary for the creation a valid contract: (1) the parties must have the capacity to contract; (2) the parties must freely give their mutual consent to the contract; (3) the parties must have a cause or reason for obligating themselves; and (4) the contract must have a lawful purpose. La.Civ.Code Ann. arts.1918, 1927, 1966, 1971, 2029 cmt. b (West 1991); *Ingraffia v. NME Hospitals, Inc.*, 943 F.2d 561 (5th Cir.1991). Further, the Louisiana Civil Code provides for only two types of employment contracts: a contract for a fixed time,[14] and the contract of a servant terminable at the will of the parties.[15] *Deus v. Allstate Insur. Co.*, 15 F.3d 506, 517 (5th Cir.1994). An employment contract for an indefinite period of time is not enforceable under Louisiana law, as the contract can be terminated at the will of either the employee or the employer. *Brannan v. Wyeth Labs.*, 526 So.2d 1101, 1104 (La.1988). Generally, lifetime em-

---

**14.** La.Civ.Code art. 2746.

**15.** La.Civ.Code art.2024, 2747.

ployment contracts are unenforceable in Louisiana, unless the employee has given some "valuable consideration" other than performance of the work entailed by his job. *Id.* Mayes' breach of contract claim rests upon her assertion that she was promised a promotion and denied it.[16] But before we can get to a breach of contract claim, Plaintiff must prove the existence of a contract. Since neither Mayes, nor Office Depot makes any mention of fixed period of employment, this Court assumes that Mayes is proceeding under the basis that she has a lifetime employment contract. Lifetime employment is premised on an employer's promise and an employee's consideration other than performance of work. Assuming *arguendo*, that Office Depot promised Mayes a promotion and lifetime employment, Mayes has not provided "valuable consideration," other than performance of work. Therefore, under Louisiana law she has no legal claim for breach of contract as her alleged indeterminate employment contract is unenforceable. Therefore, Plaintiff's claim for breach of contract is hereby dismissed with prejudice.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A. Temporal Scope of Claim

Mayes' claim of intentional infliction of emotional distress is brought under Louisiana Civil Code article 2315, which is subject to a one-year prescriptive period. La. Civil Code article 3492. This lawsuit was filed on July 3, 2001. [Doc. 1]. Therefore Plaintiff's intentional infliction of emotional distress claim, as it relates to events that occurred prior to July 3, 2000, is prescribed.

16. *Mayes Dep.*, pp. 174–75, 178–80, 238–39.

### B. Substantive Law

 Although recognizing a cause of action for intentional infliction of emotional distress in a workplace setting, this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time. *Nicholas v. Allstate Insur. Co.,* 765 So.2d 1017, 1026–7 (La.2000)(citing *White v. Monsanto,* 585 So.2d 1205, 1210 (La.1991))(collecting cases). In *White,* the Louisiana Supreme Court stated:

> [In] order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*White,* 585 So.2d at 1209. The burden is high. A plaintiff must present specific evidence of emotional damage, "there must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm . . . The plaintiff's own testimony, standing alone, may be sufficient to prove mental damages but only if the testimony is particularized and extensive enough to meet the specificity requirement . . ." *Hitt v. Connell,* 301 F.3d 240, 250 (5th Cir.2002).

Mayes fails to provide enough evidence to support a claim for emotional distress. Mayes allegations rest on Office Depot's failure to promote her, however her claim prescribed to her resignation. Assuming *arguendo* that Mayes is proceeding on the basis that her resignation was a constructive discharge, the first prong of the emotional distress test is whether the conduct of Office Depot was extreme and outrageous. It is well established that unlawful termination without more is not outrageous enough to support a finding of intentional infliction of emotional distress. *Nicholas,* 765 So.2d at 1027(collecting cases). Mayes does not provide evidence of any "outrageous" conduct other than her alleged constructive discharge, therefore she does not meet the requirements of this prong. Nonetheless, looking at the second prong of the test, the severity of her symptoms, Mayes complains generally of restless nights, tears, and anxiety attacks. *Mayes Dep.,* pp. 291–92.[17] These conclusory statements, that Mayes suffered emotional distress, won't support an award of compensatory damages. *Hitt,* 301 F.3d at 250–51. Moreover, the distress suffered by the employee must be more than a reasonable person could be expected to endure. *Nicholas,* 765 So.2d at 1026–7. Mayes makes no showing of this level of emotional disturbance. Finally, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry. *Id.* Mayes has produced no evidence establishing that Office Depot intended to cause her emotional distress, or that Office Depot was substantially certain that emotional distress (severe

or otherwise) would result from any action taken with respect to her.

Mayes failed to oppose Office Depot's Motion for Summary Judgment on this claim, perhaps it was because she was unable to evidence of the requisite distress. Based on the foregoing reasons, Mayes' claim for intentional infliction of emotional distress is dismissed with prejudice.

## VII. CONCLUSION

After reviewing the entire record, the Court finds that there are no genuine issues of material fact in dispute on Plaintiff's federal and state discrimination claims and other state law claims. Mayes has met the prima facie burden on her failure to promote claims based on race, sex, and age for the promotions of Chris Shadrix and Michael Shane Cheatham, and on her claim based on race for the promotion of Denise Cashion under Title VII, ADEA, and Louisiana Revised Statute 23:301. However, Office Depot has proven legitimate, nondiscriminatory reasons for the actions taken. Mayes has not produced any evidence of pretext in Office Depot's decisions. Therefore, summary judgment is proper on these claims as a matter of fact and law.

Mayes has not met the prima facie burdens on her Title VII, ADEA, and Louisiana Revised Statute 23:301 failure to promote claim based on sex and age for the promotion of Denise Cashion; her Title VII, 42 U.S.C. § 1981, and state law constructive discharge claims; her Equal Pay Act claim; her breach of contract claim; or her claim for intentional infliction of

---

17. "It's—it's unbearable. I—I really find it hard to talk about it sometime because, like I stated earlier, until you're in those shoes, you don't know how it feels. So I don't feel that anyone can really understand what I've been through. It's been very traumatic. It caused a lot of restless nights, a lot of tears ... [M]onth after month I've been told that I was going to be promoted and wasn't promoted and how that hurts. It was painful for me ... I had a lot of sleepless nights, a lot of anxiety attacks ..." *Mayes Dep.,* pp. 291–92.

emotional distress. Therefore, summary judgment is proper on these claims as a matter of fact and law.

Therefore:

IT IS ORDERED that Defendant Office Depot's Motion for Summary Judgment [Doc. 36] shall be GRANTED.

IT IS FURTHER ORDER that Plaintiff Irene Mayes' Amended Complaint [Doc. 2] is DISMISSED WITH PREJUDICE.