# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31008

United States Court of Appeals
Fifth Circuit

**FILED**

October 18, 2017

Lyle W. Cayce
Clerk

NELLIE B. JENKINS,

>       Plaintiff - Appellant

v.

STATE OF LOUISIANA WORKFORCE COMMISSION, Office of Workforce
Development, Louisiana Rehabilitation Services,

>       Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:14-CV-3276

Before REAVLEY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Nellie Jenkins sued her employer, the State of Louisiana Workforce Commission, alleging that the Commission failed to promote her for discriminatory reasons and retaliated against her for filing a grievance against her supervisor. The district court granted the Commission's motion to dismiss for failure to state a claim on which relief could be granted. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31008

## FACTUAL AND PROCEDURAL BACKGROUND

Nellie B. Jenkins, an African-American woman, began working for the State of Louisiana over 30 years ago. She currently works for Louisiana Rehabilitation Services ("LRS"), part of the Louisiana Workforce Commission, as a Rehabilitation District Supervisor in the Shreveport office. Gerald Dyess, a white man, served as Jenkins's supervisor in the position of Rehabilitation Regional Manager in the Shreveport office until his retirement in 2013.

Some time prior to Dyess's retirement, Jenkins alleges that Dyess "undermined Ms. Jenkins' supervisory authority" by directing "two subordinate white female employees" to report directly to him rather than to Jenkins. Jenkins filed a grievance about Dyess's action. She alleges that Dyess then "retaliated by telling other employees in the office that he intended to ensure Ms. Jenkins would not be promoted to Regional Manager" following his retirement. Dyess also allegedly spoke with the Assistant Director, Kenneth York, "about not promoting Ms. Jenkins to Regional Manager."

Dyess retired in December 2013, creating a vacancy in the Regional Manager position. According to Jenkins, until the vacancy could be filled, LRS had a "long and consistent history" of selecting the most senior supervisor to oversee daily operations as the supervisor in charge. Although Jenkins was apparently the most senior supervisor at the time of Dyess's retirement, LRS leadership selected John Vaughan, a white male, to take charge of daily operations. Jenkins alleges that Vaughan had less overall experience working for the state and less supervisory experience at the time of his appointment as supervisor in charge.

Central to Jenkins's argument is that LRS allegedly has a well-known history of hiring the supervisor in charge to become Regional Manager. Based on this history, Jenkins alleges that by selecting Vaughan to be supervisor in charge, LRS essentially "communicated" to her that it would be a futile gesture

2

No. 16-31008

to apply for promotion to Regional Manager. Accordingly, her complaint alleges that LRS discriminated against her on the basis of race and sex and retaliated against her by failing to her promote to Regional Manager, a position for which she claims it would have been futile to apply.

She filed her initial complaint against the Commission in November 2014 in the United States District Court for the Western District of Louisiana. She filed her Second Amended Complaint on May 20, 2016. Her amended complaint alleged (i) that the Commission failed to promote her because of her race and sex in violation of Title VII; (ii) that the Commission retaliated against her for filing her grievance, a protected employment action, in violation of Title VII; (iii) that the Commission's actions violated Louisiana Civil Code Article 2315; and (iv) that the actions intentionally inflicted emotional distress on her in violation of Louisiana law. The Commission filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the district court granted in August 2016. Jenkins timely appealed.

## DISCUSSION

This court reviews *de novo* a grant of a motion to dismiss under Rule 12(b)(6). *Raj v. Louisiana State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013). The court accepts "all well-pleaded facts in the complaint as true" and views those facts in the light most favorable to the plaintiff. *Id.*

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). "We affirm the district court's grant of a motion to dismiss when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level[.]" *Raj*, 714 F.3d at 330 (quotation marks omitted). "To state a claim that is facially plausible, a plaintiff must plead factual content that

3

No. 16-31008

'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)).

As an initial matter, Jenkins argues that the district court erroneously required her to plead a prima facie case at the motion-to-dismiss stage.  It is true that "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* at 331.  The prima facie standard nonetheless has some relevance at the motion-to-dismiss stage. *See Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016).  In order to make a sufficient claim of disparate treatment under Title VII, a plaintiff must "plead sufficient facts on all of the ultimate elements" to make her case plausible. *Id.*

We now address each of Jenkins's claims.

## I.    *Failure to Promote*

Jenkins alleges that LRS discriminated against her on the basis of race and sex in failing to promote her to Regional Manager.  We have applied the *McDonnell Douglas* framework when examining such claims. *Chhim*, 836 F.3d at 470 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  To succeed on a failure to promote claim, a plaintiff must ultimately show that "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).  While Jenkins need not establish or explicitly plead each element, she must at least plead facts giving rise to a reasonable inference of plausibility for the ultimate elements of her claim. *See Chhim*, 836 F.3d at 470–71.

4

No. 16-31008

Jenkins belongs to a protected class and a person outside of her protected class was hired for Regional Manager.  She did not apply for the Regional Manager position, though.  When no application was made, a plaintiff must "show that such an application would have been a futile gesture." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977)).  A futile gesture determination "usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Id.*

Jenkins relies on our use of the phrase "usually requires" in *Shackelford*, then argues no such requirement should be imposed here.  Regardless of its phrasing, our analysis relied on the Supreme Court's holding that an employee must be deterred from applying for a position due to an employer's discriminatory policy.  *See Teamsters*, 431 U.S. at 365–68.  Jenkins has failed to allege a discriminatory policy that made her application a futile gesture.  In fact, her allegations support the opposite.  The otherwise unvaried policy she claims was violated here was always to promote the most senior person.  When the Commission instead picked a junior person to be the supervisor in charge, then later chose that person for Regional Manager, that would have been a violation of the claimed policy.  Not only has no policy been shown that affected her, Jenkins also has not shown that the claimed policy was discriminatory on the basis of race or some other suspect category.

In sum, the complaint does not allege a policy of discrimination existed or that she was affected by any such policy. She thus failed to support her argument that it would have been futile to apply for Regional Manager because of a "known and consistently enforced policy of discrimination." *Shackelford*, 190 F.3d at 406.  Her claim fails.

5

No. 16-31008

## II. *Retaliation*

Jenkins argues that she sufficiently stated a claim for retaliation under Title VII.  According to Jenkins, Dyess told other employees he intended to ensure she would not be promoted after filing a grievance about his instructions for two white employees to report directly to him rather than Jenkins.  The prima facie elements for retaliation require a showing that "(1) she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Shackelford*, 190 F.3d at 407–08.  As with the failure to promote claim, these elements are helpful in analyzing the sufficiency of her complaint.  *See Chhim*, 836 F.3d at 470–71.

Jenkins argues that she sufficiently alleged a protected activity of filing a grievance against Dyess.  "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)).  An employee's complaint to her employer that is vague, "without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (quoting *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011)).

Jenkins alleges that she is African American and the other parties are white, but she alleges no facts to suggest Dyess was engaged in discrimination when shuffling reporting assignments.  Additionally, the complaint makes no allegation that Jenkins's grievance was opposing or protesting racial or sexual discrimination.  She argues for the first time in her brief that in making his

6

decision, "Dyess may feel it is inappropriate for white employees to report to African-American supervisors," but she made no such allegation in her complaint. She has not pled facts sufficient to raise a plausible inference that she engaged in a protected activity. Accordingly, we need not reach her arguments for the remaining retaliation elements.

## III.    *Negligence*

Jenkins brings a negligence claim under Article 2315 of the Louisiana Civil Code. She argues that one of our precedents interprets Article 2315 as giving rise to liability of employers for breach of statutory duties to their employees. *See Guillory v. St. Landry Par. Police Jury*, 802 F.2d 822, 826 (5th Cir. 1986). We did not decide, though, whether Article 2315 was implicated because the employer did not violate Guillory's constitutional or statutory rights. *Id.* Instead, we held that, in the absence of any violation of Guillory's rights, "the district court properly rejected his claim under Article 2315." *Id.* Because we hold that Jenkins's complaint does not properly allege a violation of her constitutional or statutory rights, she therefore fails to state a claim for relief under Article 2315.

## IV.    *Intentional Infliction of Emotional Distress*

Jenkins also seeks recovery for intentional infliction of emotional distress under Louisiana law. To recover, she must establish

(1) that the conduct of the defendant was extreme and outrageous;
(2) that the emotional distress suffered by the plaintiff was severe; and
(3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Louisiana further limits recovery to cases involving "a pattern of deliberate, repeated harassment

No. 16-31008

over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000). "[T]he employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry." *Id.* at 1027.

Jenkins alleges that her supervisory authority was undermined, that she was passed over for a promotion, and that her supervisors discussed an "inappropriate case note" with her. She does not allege any severe emotional distress, nor do her allegations plausibly state extreme or outrageous conduct. Her complaint does not therefore assert a right to relief on this claim.

AFFIRMED.