# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30577

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2019

Lyle W. Cayce
Clerk

TRAVIS THOMAS,

      Plaintiff - Appellant

v.

MICHAEL TREGRE, Chief Law Enforcement Officer, St. John the Baptist Parish,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

HAYNES, Circuit Judge:

Travis Thomas, a former deputy in St. John the Baptist Parish, Louisiana, appeals the district court's order granting summary judgment on his race discrimination and retaliation claims. For the reasons set forth below, we AFFIRM the district court's judgment.

## I.    BACKGROUND

Thomas, an African-American man, worked as a deputy in the St. John the Baptist Parish Sheriff's Office (the "Sheriff's Office") from July 1, 2012, to

No. 18-30577

April 7, 2015. Sheriff Michael Tregre, also an African-American man, was at all relevant times the chief law enforcement officer of the parish.[1]

While working in the narcotics division of the Sheriff's Office in February 2014, Thomas took part in an operation that led to the arrest of criminal suspect Darnell Randle. Thomas later informed Major Walter Chappel, then the commanding officer of the narcotics division, that blood found on the floor of the scene belonged to Randle. Thomas also told Chappel he saw fellow officer Justin Bordelon striking Randle. Another officer, Hardy Schexnayder, also reported that he saw Bordelon strike Randle. Bordelon denied using force to intentionally injure Randle. Schexnayder and Chappel are African-American. Bordelon is Caucasian.

The internal affairs division of the Sheriff's Office opened an investigation into the Randle incident. Captain C.J. Destor, who is Caucasian, conducted the investigation. Both Chappel and an African-American detective named Jonathan Rivet corroborated Thomas and Schexnayder's testimony during the investigation, stating that they personally observed Bordelon use force against Randle. But Randle told Destor that Thomas and Schexnayder, not Bordelon, were the officers who beat him.

Thomas, Schexnayder, and Bordelon all took polygraph tests during the investigation. The polygraph results indicated that Bordelon was truthful and Schexnayder was lying. Thomas's test results were inconclusive. Given the parties' numerous conflicting statements, Tregre did not find that any officer's version of events was decisive. He thus decided not to take any disciplinary action against any of the officers.

Tregre asserts that about a year later, the local district attorney's office told him its attorneys were filing motions in limine to exclude evidence from

---

[1] Thomas sued Tregre in his official capacity as Sheriff of St. John the Baptist Parish.

the Randle investigation, including polygraph results, in cases involving Thomas and Schexnayder. Tregre believed this was an issue, so he attempted to transfer Thomas and Schexnayder in March 2015 to positions in the corrections department, which Tregre believed were less likely to result in arrests.[2] Tregre did not transfer Bordelon. Schexnayder accepted the transfer and became a courtroom deputy. Thomas decided to terminate his employment immediately rather than accept a transfer.

In the meantime, Randle sued Tregre, Thomas, Schexnayder, and Bordelon, alleging excessive force. The case went to trial in December 2015. The jury found that neither Thomas nor Schexnayder was liable.

After the jury verdict, Tregre reassigned Schexnayder to an enforcement position and gave him back pay. Thomas never applied to resume work at the Sheriff's Office. Instead, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in August 2015. Thomas asserts that he later asked Tregre in person about reinstatement in January 2016. Thomas's attorneys also sent a settlement letter to Tregre in January 2016 requesting "re-instatement at the rank of Sergeant, with a recommendation that he be

---

[2] Tregre's explanations for transferring Thomas and Schexnayder are somewhat inconsistent. Tregre first claimed he transferred Thomas and Schexnayder after the district attorney told him she would no longer accept their testimony in criminal cases due to their polygraph results. But the district attorney stated in a sworn affidavit that she did not tell Tregre she would not accept Thomas's testimony due to his polygraph results. Tregre later stated that the district attorney's office advised him that "the results of the internal affairs investigation would result in the D.A.'s Office having problems prosecuting cases wherein [Thomas] and Deputy Schexnayder were witnesses." Tregre also said he recognized that "[t]he polygraph [couldn't] be used," but that he transferred Schexnayder and Thomas "to clear [the] matter up and to . . . stop the tension" in the narcotics division. Nevertheless, because we hold that there is no genuine issue of material fact as to whether Thomas has made a prima facie case of discrimination, we do not reach Tregre's explanations for the transfer. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam) ("If the plaintiff makes a prima facie showing, the burden *then* shifts to the employer to articulate a . . . nondiscriminatory . . . reason for its employment action." (emphasis added)).

assigned to the U.S. Marshal Task Force," (2) back pay and benefits, and (3) costs and attorney fees.  Tregre has not rehired Thomas.

After going through the EEOC, Thomas filed suit against Tregre in district court, alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Both Thomas and Tregre moved for summary judgment.  The district court denied Thomas's motion and granted Tregre's motion on April 12, 2018, concluding that Thomas had failed to establish a prima facie case of either race discrimination or retaliation.  Thomas now appeals.

## II.    STANDARD OF REVIEW

We review a district court's "grant of a motion for summary judgment de novo, applying the same standard as the district court." *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).  "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Howell*, 827 F.3d at 522 (quoting *Moss*, 610 F.3d at 922).  A court will enter summary judgment if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.    DISCUSSION

### A. Race Discrimination

Thomas first asserts that Tregre discriminated against him due to his race.  Title VII of the Civil Rights Act makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

4

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).

A Title VII plaintiff bears the initial burden of establishing a prima facie case of racial discrimination, after which the burden shifts to the employer to show "some legitimate, nondiscriminatory reason" for the challenged actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To make a prima facie showing of racial discrimination, a plaintiff must show that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

Thomas has failed to create a genuine fact issue regarding the fourth prong of his racial discrimination claim.  The internal investigation exonerated Bordelon, while concluding that Thomas should be "severely reprimanded" or even terminated because his "credibility ha[d] been destroyed for future court cases."  Thomas and Bordelon were thus not similarly situated when Tregre attempted to transfer Thomas.  *See Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016) ("With respect to the 'similarly situated employees' requirement, 'a plaintiff must show that he was treated less favorably than others under nearly identical circumstances.'" (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014))).

Thomas contends that he and Bordelon were similarly situated not at the time of the transfer, but at the beginning of the Randle investigation—which he argues was itself discriminatory.  Thomas notes that the African-

No. 18-30577

American officers present at the scene all stated that Bordelon had used force against Randle. The only person who reported that Thomas and Schexnayder used force on Randle was Randle himself. Thomas implies that Randle was not a reliable witness, as he underwent a drug test in connection with his statements during which he tested positive for cocaine and marijuana. Randle was not polygraphed due to the drugs in his system. On the other hand, the investigation concluded that his recall of events was too detailed on other matters "for him not to remember who beat him up." Thomas does not explain how, given the parties' conflicting stories (not to mention the contrary polygraph results), accepting Randle's version of events qualified as racial discrimination. He has thus not created a genuine issue of material fact with respect to whether he was "treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

Nor has Thomas raised a genuine issue of material fact as to whether he was replaced with someone outside his protected class. *See id.* (stating that a plaintiff may satisfy the fourth prong of a prima facie discrimination case by showing he "was replaced by someone outside his protected group"). In discussing his retaliation claim, Thomas argues that instead of rehiring him, Tregre hired Jake Boudreaux, a Caucasian officer, to the narcotics division after Thomas resigned.[3] But multiple people left and were hired by the Sheriff's Office after Thomas's resignation. Tregre did not hire Boudreaux until over ten months after Thomas had resigned. Indeed, the Sheriff's Office also hired deputy Christopher Powell, an African-American man, less than three months after hiring Boudreaux. Thomas points to no evidence that his position remained vacant for nearly a year and that Boudreaux assumed it.

---

[3] Thomas does not explicitly argue that Boudreaux replaced him in connection with his racial discrimination claim. Nevertheless, out of an abundance of caution, we address the point here.

6

Thomas has thus failed to create a genuine issue of material fact regarding the fourth prong of his discrimination claim.

## B. Retaliation

Thomas next asserts that Tregre retaliated against him by refusing to reinstate him after he filed a complaint with the EEOC. To establish a prima facie retaliation claim, Thomas must show that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* at 556–57. Thomas has not produced evidence creating a genuine issue of material fact with respect to the second or third prong of a prima facie retaliation claim.

First, Thomas has not raised a genuine fact issue regarding whether Tregre "took an adverse employment action against him." *Id.* at 557. Failure to hire is an adverse employment action. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997) ("Adverse employment actions include . . . refusals to hire . . ."). But Thomas never actually applied for an available position with the Sheriff's Office after he resigned. Instead, he verbally asked Tregre for reinstatement in January 2016. Thomas's attorneys also sent Tregre a settlement letter requesting "re-instatement at the rank of Sergeant, with a recommendation that he be assigned to the U.S. Marshal Task Force," (2) back pay and benefits, and (3) costs and attorney's fees. Thomas asserts that a formal application is not the only means by which the Sheriff's Office hired employees. He points to Tregre's testimony that he brought on new officers using fliers, career days, and word of mouth. But Thomas has not produced evidence showing that the Sheriff's Office actually hires employees without requiring them to submit an employment application; nor has he presented evidence of such an application for a then-available position.

No. 18-30577

In the context of failure-to-promote claims, we have held that a plaintiff asserting such a claim must show that "he applied for" the position sought. *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (per curiam) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007)).[4] We conclude that rule applies here as well.[5] Thomas never applied for reinstatement.[6] His conversation with Tregre and his settlement letter demanding reinstatement, back pay, and attorney's fees and costs were not applications for employment. Tregre's refusal to give Thomas a job for which he never actually applied was therefore not an adverse employment action.

Additionally, even if Thomas presented some evidence of an application, he presents no evidence showing a causal connection between his filing an

---

[4] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

[5] Several of our sister circuits have similarly recognized that a plaintiff asserting retaliatory failure to hire must have applied for the position at issue. *See, e.g., Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (holding that a plaintiff alleging failure to hire satisfies the materially adverse employment action requirement in part by showing that she "*applied* . . . for the . . . position" (emphasis added) (quoting *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 812 (7th Cir. 2005))); *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 807 (1st Cir. 2006) ("Put most simply, in the absence of a job application, there cannot be a failure-to-hire."); *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) ("Where, as here, the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show . . . that [she] applied for an available job . . ." (alteration in original) (quoting *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003))); *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986) (requiring a plaintiff alleging retaliatory failure to hire "to show that the position for which she *applied* was eliminated or not available to her because of her protected activities" (emphasis added)).

[6] A plaintiff alleging failure to promote who did not apply for the position at issue must "show that such an application would have been a futile gesture." *Jenkins*, 713 F. App'x at 245 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999)). This, of course, is a difficult task, which "usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Shackelford*, 190 F.3d at 406. Thomas does not argue that applying for reinstatement would have been futile. We thus decline to address this exception in connection with Thomas's claim.

EEOC complaint and Tregre's refusal to rehire him. Indeed, the evidence shows that Tregre has at least once recommissioned an employee who previously filed an EEOC complaint against him. Thomas has thus failed to create a genuine issue of material fact with respect to both the second and third prongs of his retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.