# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 26, 2023

Lyle W. Cayce
Clerk

No. 21-50472

Kylee M. Paugh,

*Plaintiff—Appellant*,

*versus*

Lockheed Martin Corporation,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CV-154

Before Dennis, Elrod, and Duncan, *Circuit Judges*.

Per Curiam:*

    Kylee Paugh appeals the summary judgment dismissing her employment discrimination claims against Lockheed Martin. We affirm in part and reverse in part.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50472

I

Before 2019, Raytheon serviced live-fire training facilities with digital feedback at the Army's Fort Bliss. Raytheon subcontracted the servicing at one such facility—Range 66A&B—to Tapestry Solutions, who employed nine workers at the site. Among them was Appellant Kylee Paugh, the only woman.

In March 2018, the Army awarded a follow-on service contract to Appellee Lockheed Martin that subsumed Raytheon's servicing of several training facilities (including Range 66A&B) beginning January 1, 2019. At the time, Executive Order 13495 ("EO 13495") required all follow-on government contractors, like Lockheed Martin here, to hire "qualified" incumbent employees displaced by the new contract.[1]

To comply with EO 13495, Lockheed Martin established an "incumbent capture" plan, posted several job requisitions to its website, considered only those who applied for a job, and preferred incumbent applicants, like Paugh, for hiring. When more than one incumbent applied for a particular job, Lockheed Martin chose the best qualified incumbent applicant, defaulting to the longer service time when qualifications were identical. Lockheed Martin ultimately hired only incumbents for all available positions. But its contract allowed for fewer positions than the predecessor

---

[1] *See* Exec. Order No. 13,495, Nondisplacement of Qualified Workers Under Service Contracts, 74 Fed. Reg. 6,103 (Jan. 30, 2009) (previously codified at 29 C.F.R. § 9), *rescinded by* Exec. Order No. 13,897, Improving Federal Contractor Operations by Revoking Executive Order 13495, 84 Fed. Reg. 59,709 (Oct. 31, 2019), *revoked by* Exec. Order No. 14,055, Nondisplacement of Qualified Workers Under Service Contracts, 86 Fed. Reg. 66,397 (Nov. 18, 2021). *See generally* 41 U.S.C. §§ 6701–6707 (2012) (Service Contract Act).

contract.  As a result, several incumbent applicants, like Paugh, were left unemployed under the follow-on contract.

Paugh had applied for nine jobs with Lockheed Martin. She first applied for General Maintenance Worker positions in March and September 2018.   Hearing no response, Paugh attended a Lockheed Martin "familiarization event," where she introduced herself to hiring manager Matthew Murphy and raised her pending applications.  Paugh thought Murphy was "very uncomfortable" and "very fidgety" around her, unlike around her male colleagues.  Murphy warned her that Lockheed Martin would hire fewer employees than the predecessor contractor, so not every current employee would get a job.  But Murphy did not tell Paugh that the General Maintenance Worker positions could later be cancelled or encourage her to apply for other positions.  At the same event, Murphy told Paugh's then-supervisor Adam Granger that the Information Security Technician position he had applied for would be cancelled later.  Murphy does not recall telling any workers to apply for specific jobs but believes he told General Maintenance Worker applicants to consider Computer Operator I and Electronic Technician I positions.  Of the four women at the familiarization event, Lockheed Martin later hired three, but not Paugh.

Paugh was not hired for either General Maintenance Worker position for which she applied in March and September 2018. Lockheed Martin cancelled the first position in July or August, citing changing needs.  For the second, it hired another incumbent, Saul Padilla, by December 2018.  Finally, also in December 2018, Paugh applied for seven other positions.  Lockheed Martin cancelled six of them and hired another incumbent, Eddie Dominguez, for the seventh.  By the new year, Lockheed Martin had hired male incumbent James Mendez to start and all eight of Paugh's male Tapestry Solutions co-workers to resume work at Range 66A&B—but not Paugh.

No. 21-50472

Paugh timely filed an EEOC complaint against Lockheed Martin, obtained a right-to-sue letter, and sued for sex discrimination and retaliation under Title VII and the Texas Labor Code based on failure to hire and "discriminatory implementation" of EO 13495. These claims proceeded through discovery. Invoking the *McDonnell Douglas* framework, Lockheed Martin moved for summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The district court found Paugh's EO-13495 claim cognizable only as a failure-to-hire claim but granted Lockheed Martin summary judgment as to that claim and Paugh's remaining failure-to-hire claims. *Paugh v. Lockheed Martin Corp.*, No. EP-20-CV-154-DB, 2021 WL 1841644, at *7–10 (W.D. Tex. May 7, 2021). Paugh appealed.

II

We review a summary judgment *de novo*. *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the non-movant. *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018).

III

The district court granted summary judgment as to Paugh's claim based on EO 13495, treating it as a failure-to-hire claim. As explained below, we agree with the district court that two of Paugh's failure-to-hire claims were properly dismissed on summary judgment, but we reverse as to the third. Paugh also continues to pursue her argument that the EO's "Nondisplacement of Qualified Workers" clause afforded her something more—namely, a justiciable "right of first refusal" to a job with Lockheed Martin as a follow-on government contractor. We disagree.

4

No. 21-50472

Some district courts have accepted this argument. *See Sorber v. Sec. Walls, LLC*, No. A-18-CV-1088, 2020 WL 2850227, at *2, *11–12 (W.D. Tex. June 1, 2020) (finding implementation of EO 13495 could be the subject of a Title VII disparate impact suit and denying summary judgment because some plaintiffs were not offered a right of first refusal).[2] Others have not. *See Atterbury v. U.S. Marshals Serv.*, No. 12-CV-502-A, 2018 WL 2100600, at *11 (W.D.N.Y. May 7, 2018) (rejecting argument that EO 13495 creates a justiciable due-process claim), *rev'd and remanded on other grounds*, 941 F.3d 56 (2d Cir. 2019); *McClellan v. Skytech Enters., Ltd.*, No. CIV-12-202-RAW, 2012 WL 3156861, at *2 (E.D. Okla. Aug. 3, 2012) (rejecting argument that EO 13495 creates a justiciable "violation of public policy" claim). Agreeing with the latter group, we conclude EO 13495 does not create a stand-alone employment discrimination claim.

Before its recission in 2019, EO 13495 required a nondisplacement clause in most follow-on government contracts, like the one here, ensuring those contractors hired employees otherwise displaced by the new service contract. 74 Fed. Reg. at 6,103; *see* 29 C.F.R. §§ 9.1 *et seq.* The clause, in turn, purported to create for those employees "a right of first refusal of employment under the contract in positions for which they are qualified." 74 Fed. Reg. at 6,103; *see Adams & Assocs., Inc. v. NLRB*, 871 F.3d 358, 365 (5th Cir. 2017) (noting EO 13495 "required the successor to issue employment offers no later than 10 days prior to the commencement of operations").

---

[2] The district court cited *Sorber* with approval. To the extent the district court accepted the view that the EO creates a stand-alone cause of action, we disagree. At the same time, however, the district court construed such a cause of action to be essentially the same as a failure-to-hire claim. So, our possible disagreement with the district court on this point is ultimately immaterial.

But the EO never purported to displace or supplement antidiscrimination law. To the contrary, the EO did "not intend[] to, and d[id] not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." 74 Fed. Reg. at 6,106. That included creating "no rights under the Contract Disputes Act." *Id.* at 6,105. The EO's enforcement was vested entirely in the Secretary of Labor, who was "responsible for investigating and obtaining compliance" and who could arbitrate disputes and "issue final orders prescribing appropriate sanctions and remedies" against noncompliant government contractors. *Ibid.* Government contractors could seek judicial review of the Secretary's final decisions under the Administrative Procedure Act. *See id.* at 6,106; *cf. Data Monitor Sys., Inc.*, 364 N.L.R.B. No. 4 (May 31, 2016). By its own terms, then, the EO and the "Nondisplacement of Qualified Workers" clause do not afford Paugh a justiciable "right of first refusal" to a job with Lockheed Martin as a follow-on government contractor.

As a result, we need not address Paugh's arguments related to Lockheed Martin's compliance with former EO 13495 or implementation of the terms of the follow-on contract.[3] Whatever the thrust of EO 13495 today, it does not transform Paugh's employment discrimination claim into anything more than a typical failure-to-hire suit. The district court correctly analyzed it as such, and we do the same here.

---

[3] For the same reason, we decline to address whether Paugh has standing to sue under the follow-on contract.

IV

Paugh brought sex discrimination claims against Lockheed Martin under Title VII and the Texas Labor Code.[4] Title VII prohibits employment discrimination based on a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Paugh's claims rest on circumstantial evidence, so we apply *McDonnell Douglas*. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). Under that familiar framework, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If she does, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Ibid.* If the defendant provides reasons, the burden then shifts back to plaintiff to prove that each reason is pretextual. *Id.* at 804.

To establish a prima facie case of discrimination, the plaintiff must establish that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014); and citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)). The parties do not dispute that Paugh is a member of a protected class (a woman) and was qualified for available positions. The claims arise from a failure to hire Paugh (1) for a job at Range 66A&B for which she did not apply, (2) for jobs for which she applied but were cancelled by Lockheed Martin, and (3) for jobs for which she applied

---

[4] Under Texas law, both claims collapse into a Title VII inquiry. *See Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir.) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012)), *cert. denied*, 142 S. Ct. 216 (2021).

but other candidates were selected. *See Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 555 (5th Cir. 1997) (observing that "[a]dverse employment actions include . . . refusals to hire" (citations omitted)). We apply the *McDonnell Douglas* framework to each in turn.

A

Paugh claims she was treated less favorably than male candidates because Lockheed Martin hired Mendez for the follow-on of her Tapestry Solutions job at Range 66A&B despite her ostensible contractual right of first refusal.  We disagree.

Our precedent teaches that a plaintiff asserting adverse employment action based on a failure-to-hire must show that she "actually applied for" the position sought. *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019). When a plaintiff does not apply, she must show "an application would have been a futile gesture." *Id.* at 464 n.6 (quoting *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (per curiam)).

Paugh concededly did not apply for the position, and argues that, had she applied, she would have been hired because her experience made her clearly more qualified than Mendez.  Lockheed Martin confirmed that it would have hired her "in a heartbeat."  It is therefore beyond dispute that her application would not have been an exercise in futility. And even assuming Paugh applied for similar jobs, Lockheed Martin had no duty to consider her other applications for this particular job. *See McClaine v. Boeing Co.*, 544 F. App'x 474, 477 (5th Cir. 2013) (per curiam) (recognizing Title VII imposes no duty on employers to consider applicants for positions similar to the position for which they applied). Paugh thus faced no adverse employment action and has failed to present a prima facie case of sex discrimination on this basis.

B

Paugh separately claims that, unlike her male colleagues, she was kept in the dark about which positions Lockheed Martin actually intended to fill, with the result that she applied for seven positions that Lockheed Martin ultimately cancelled. We reverse the district court on this claim, holding that Paugh has created a genuine issue of material fact as to whether critical hiring information was meted out discriminatorily in violation of Title VII.

Paugh's case presents a particular factual scenario, one that does not fit the ordinary mold of employment discrimination cases. With such cases, it is important to recall that the *McDonnell Douglas* framework for establishing a *prima facie* case of discrimination "was not intended to be an inflexible rule." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978). Indeed, "[t]he facts necessarily . . . vary in Title VII cases," and the elements of the *prima facie* case are "not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13.

The point of the *McDonnell Douglas* framework is to require Title VII plaintiffs to demonstrate that the complained-of adverse employment action "did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977). Neither of these legitimate reasons dooms Paugh's claim as to the cancelled positions for which she applied: She was qualified, and there *were* vacant positions to which she, as an incumbent, was entitled to preference pursuant to EO 13495—but Paugh, unlike her male counterparts, simply did not know which vacancies were real and which were illusory. This, she suggests, was the fruit of sex discrimination in the hiring system. As our sister circuits have done in

No. 21-50472

comparable situations[5], we hold that Paugh has establish a *prima facie* case of employment discrimination even though she did not apply for an "available" position.

Lockheed Martin contends that it had a neutral, non-discriminatory reason for its cancellation of job postings: changed staffing needs. But Paugh carried her burden to raise the inference that this reason was pretextual: She alleged (and deposition testimony confirms) that Lockheed Martin's hiring

---

[5] *See, e.g.*, *Williams v. Giant Food Inc.*, 370 F.3d 423, 431 (4th Cir. 2004) ("[I]f the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position."); *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (holding the application requirement inapplicable when the plaintiff was "unaware of specific available positions because the employer never posted them"); *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir. 1990) ("A relaxation of the application element of the prima facie case is especially appropriate when the hiring process itself, rather than just the decision-making behind the process, is implicated in the discrimination claim or is otherwise suspect."); *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793, 797 (11th Cir. 1988), *opinion amended on reh'g*, 850 F.2d 1549 (11th Cir. 1988) (holding that "a plaintiff may raise an inference of intentional, racially-disparate treatment without proving that he technically applied for, and failed to obtain, the promotion" because of an "informal, secretive selection process"); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) ("When an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat. . . . In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied."); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir. 1980) (holding that "[r]ejection of appellants' claims because they failed to apply often enough or at the correct times ma[de] little sense . . . , in view of the [employer's] admitted practice of hiring . . . before openings formally became available and were announced, which rendered futile the making of applications for [those] jobs . . . ."); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 347 (10th Cir. 1975) (rejecting a "highly literal interpretation" of *McDonnell Douglas* where "substantial factual variances" suggested "no necessity" for the plaintiffs "to point to a specific [job] opening" because they sufficiently "raised an inference of discrimination" in the employer's system of promotion); *cf. Coleman v. Schneider Elec. USA, Inc.*, 755 F. App'x 247, 249 (4th Cir. 2019) (unpublished) ("A plaintiff cannot establish a prima facie case if the employer eliminates the position that the plaintiff applied for *without other evidence of discriminatory intent*." (emphasis added)).

No. 21-50472

manager, Matthew Murphy, told her male colleague and team leader, Adam Granger, that his position was going to be cancelled.[6] Paugh says that, unlike Granger, she never got the helpful tip-off that any specific position would be cancelled such that she could apply to positions that Lockheed Martin would actually keep rather than cut. Rather, when she told Murphy at the event that she "was a Tapestry Solutions employee who had applied for a General Maintenance Worker position," he allegedly made the broad (and ominous) statement that "Lockheed Martin was going to be making cuts and that not everybody would get their job [sic]." Paugh later compared notes with her other male coworkers and discovered that Murphy "did not tell [them] that Lockheed Martin was going to be making cuts and that not everybody would get their job." And they all—without exception—received offers.

Seven of the nine positions for which Paugh applied were cancelled, and the circumstantial evidence that Paugh presents suggests sex discrimination as a plausible explanation. Lockheed Martin has not rebutted Paugh's plausible allegation of pretext. Even if changed circumstances required a workforce reduction, the company failed to explain why she was left in the dark about which job postings would be on the chopping block. This theory and the evidence that Paugh offers is enough to get her claim before a jury. We accordingly vacate the district court's order dismissing it and remand for further proceedings.

---

[6] This occurred in the context of a Lockheed Martin meet-and-greet, at which Murphy met Tapestry Solutions employees and advised them about the Lockheed Martin hiring process. Murphy testified that at Lockheed Martin's "familiarization event" he sought to "make sure that [Tapestry Solutions employees] kn[e]w that they may have to kind of expand their horizons a little bit with regard to what they applied to, because we were going to have incumbents that weren't going to be hired." He claimed that he was "telling anyone that identified themselves as a general maintenance worker that they ought to try to take a look at computer operator I and electronic technician I positions."

No. 21-50472

### C

For the jobs filled by male candidates, the district court found Paugh had presented a prima facie case but had not shown pretext because Paugh was not "clearly better qualified" than Padilla or Dominguez. *Paugh*, 2021 WL 1841644, at *8 (quoting *Moss*, 610 F.3d at 922–23). On appeal, Paugh challenges only her qualifications relative to Padilla, so she has waived her arguments with respect to Dominguez. *See Rutherford*, 197 F.3d at 193.

Paugh applied for two jobs that were filled by men.[7] Relevant here, on September 4, 2018, Paugh applied to be a General Maintenance Worker. Lockheed Martin instead hired Saul Padilla, believing him to be the more qualified candidate—a legitimate, nondiscriminatory reason. Paugh contends she had clearly better qualifications and a longer service tenure than Padilla, so his qualifications are merely pretext for discrimination. We disagree.

A plaintiff may demonstrate pretext by "showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (cleaned up). Alternatively, a "fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." *EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) (collecting cases). Superior qualifications are probative of pretext when "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss*,

---

[7] Paugh suggests there was another job she applied for but lost out to a man, Hector Villalobos. That is factually incorrect, as she relies on the same job requisition for which Lockheed Martin hired Dominguez.

610 F.3d at 923 (quoting *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)). That is not the case before us.

Both Paugh and Padilla had been General Maintenance Workers under the Raytheon contract, but Paugh worked in her position for eight months—a mere month longer than Padilla. Paugh also ignores that, before her arrival, Padilla worked an additional stint with Lockheed Martin on an earlier contract at Fort Bliss. Regardless, an employee's "better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified." *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002); *see also McDaniel v. Nat'l R.R. Passenger Corp.*, 705 F. App'x 240, 246 (5th Cir. 2017) (per curiam) (observing "this court has repeatedly stated that an attempt to equate years served with qualifications is unpersuasive" (cleaned up)). Paugh has failed to raise a genuine dispute of material fact as to whether she was clearly more qualified than Padilla. She therefore has failed to rebut as pretextual Lockheed Martin's legitimate, nondiscriminatory reason for hiring Padilla over her.

V

For the foregoing reasons, we AFFIRM the district court's dismissal of Paugh's failure to hire claims based on positions for which she did not apply and positions for which she did apply but for which she was not selected. We REVERSE the district court's grant of summary judgment in favor of Defendant as to Paugh's failure to hire claim based on the positions for which she applied but were cancelled by Lockheed Martin, and we REMAND for further proceedings not inconsistent with this opinion. AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.